**266 P.2d 494**

**HARDINGE CO., Inc.  v.  EIMCO CORP.**

**No. 8000.**

Supreme Court of Utah.

Feb. 4, 1954.

Fabian, Clendenin, Moffat & Mabey, Peter W. Billings, Salt Lake City, for appellant.

Golden W. Robbins, Salt Lake City, for respondent.

McDONOUGH, Justice.

Appeal from a judgment entered in favor of plaintiff after a pre-trial conference, based on stipulated facts, answers to interrogatories, and documents filed by the parties. The trial court found that under a contract entered by the parties in March, 1945, and subsequently amended, the defendant, Eimco Corporation, was indebted to the plaintiff, Hardinge Company, in the amount of $6,232.12, which was the amount that Hardinge Company paid as freight on items shipped by Eimco from Salt Lake City to York, Pennsylvania. Other items on counterclaim were allowed the defendant but these are not here in dispute.

The original contract provided that the price of steel liner plates for ball mills, to be shipped by defendant to plaintiff, was $10.40 per cwt. f. o. b. York. On April 19, 1945, plaintiff issued its alteration No. B to the purchase order, stating that there was a typographical error in the price, which should be $9.40 per cwt. f. o. b. York, Pennsylvania, in accordance with the agreement between the two companies. This was accepted by Eimco. On July 9, 1945, plaintiff issued alteration No. E, providing:

"Ship via freight collect on Govt. Bill of Lading, to: U. S. Treasury Dept., Procurement Division, c/o Commanding Officer, Marietta Holding and Reconsignment Pt., Marietta, Pennsylvania. Route via DRGW—MOPAC—PRR."

This alteration made the destination of the goods a point about twenty miles distant from York, Pennsylvania, and provided that they be shipped freight collect to the U. S. Government. It did not provide for payment of the freight as between the two companies. Eimco shipped the liners as per the instruction and the government paid the freight, billing Hardinge for $6,233.12, which was the freight rate from Salt Lake City, Utah, to Marietta, Pennsylvania, less the rate from York, Pa., to Marietta, Pa. Hardinge paid the govern-

ment bill and also the invoice from Eimco for $9.40 cwt. with no deduction for freight. After considerable correspondence with Eimco regarding the payment of the freight, Hardinge commenced this action with summons served September 26, 1949, and Eimco answered that the suit was barred by the Statute of Limitations.

The principal question on appeal, then, is which limitation applies. Appellant contends that respondent's suit is subject to the four-year limitation of U.C.A.1953, 78–12–25, "An action for relief not otherwise provided for by law", or the three-year limitation of U.C.A.1953, 78–12–26(3) "An action for relief on the ground of fraud or mistake". Respondent contends, and the lower court so held, that his action was upon a written contract and hence is governed by the six-year provision of U.C.A. 1953, 78–12–23.

Appellant cites to us cases from our own jurisdiction and others, where there was no express provision of the contract upon which to base an action but merely an obligation imposed by law, where it was held that the six-year limitation of contract actions would not apply, even though a written contract defined the relationship of the parties. Brown v. Cleverly, 93 Utah 54, 70 P.2d 881 (an action to assert an equitable lien upon property repossessed by seller); Petty & Riddle, Inc., v. Lunt, 104 Utah 130, 138 P.2d 648 (an action by a corporation to recover money paid on taxes assessed subsequent to a division of its property among shareholders under an agreement providing that property was to be divided after all bills payable were paid from the monies on hand). These cases illustrate the distinction between an implied contract, arising because of the circumstances under which money was paid, and an express contract to which the longer period of limitation would apply; but they are not determinative of the present case.

The original contract here provided that the price of the liners was to be $10.40 f. o. b. York, Pennsylvania. The abbreviation f. o. b. for "free on board" is well known for its commercial significance and is quite generally accepted by the courts without proof. It denotes the duty of the seller to deliver the goods free from all charges on board the vehicles of the carrier, Harman v. Washington Fuel Co., 228 Ill. 298, 81 N.E. 1017; that goods are to be delivered at a certain place f. o. b. means that they will be delivered to a carrier at that place free of drayage charges, etc. Muskegon Curtain-Roll Co. v. Keystone Mfg. Co., 135 Pa. 132, 19 A. 1008. The contract included packing instructions to comply with government specifications for overseas shipment and provided that the buyer be notified when the shipment was ready, with the admonition, "Do not ship until released." Alteration B corrected the price to $9.40 per cwt. f. o. b. York, Pa., provided for shipment to York for a limited quantity, and stated, "The rest of the liner plates are to be shipped direct. Complete

instructions will be given to you later." Alteration E, as noted above, directed that the shipment be sent freight collect on a Government Bill of Lading to Marietta, Pa. Alteration E also stated "Only the items specifically referred to are affected by this alteration form. The remainder of the order is unchanged."

The effect of Alteration E was to provide shipping instructions under an agreement already determined. It is fundamental that if effect can be given to both of two apparently conflicting provisions in a reasonable reconciliation that interpretation will control. 3 Williston on Contracts, sec. 622. Here, the fact that the shipment was to be made freight collect, a common situation under a government order, does not necessarily abrogate the price scheduled at $9.40 cwt. f. o. b. York, Pa. Further, in the interpretation of contracts, the interpretation given by the parties themselves as shown by their acts will be adopted by the court. 3 Williston on Contracts, sec. 623. The defendant's interpretation of the contract is illustrated by its invoice marked f. o. b. York, Pa., and by its letter of November 29, 1945, in which M. M. Kaiser, Manager of the Eastern Division of Eimco, states that his company is agreeable to refunding the amount of freight charges and will issue a check upon receipt of a government bill of lading. Thus, it is obvious that at the beginning of these negotiations, Eimco regarded its duties under the contract as including the payment of freight from Salt Lake City to York.

Appellant apparently claims that because Hardinge paid the full amount of its invoice without deducting freight charges, that Hardinge can only recover in an action based upon money paid by mistake. The rights of the Hardinge Company arose under the contract regardless of the fact that the money was in the hands of Eimco at the time suit was brought; if the price had not been stated in the contract, Hardinge would have no right to recover. Therefore, the promise was express and the action was founded upon a contract in writing and brought within the limitation period set forth in U.C.A.1953, 78–12–23.

It is recognized that plaintiff in this action could have begun its suit as either an action to recover money paid under mistake or an action on the contract. The general rule covering situations of this type is stated in 34 Am.Jur., Limitation of Actions, § 50 to be: "If a substantial doubt exists as to which is the applicable statute of limitations, the longer rather than the shorter period of limitation is to be preferred."

Both parties cite as error the computation of freight due from Eimco to Hardinge. The difficulty arises because of the variation in the figures of the Eimco Company upon its invoice and the figures of the U. S. Government in its letter to Hardinge

324

Company. The government claimed reimbursement for freight paid upon a total of 466,900 pounds, whereas Eimco claims to have shipped only 461,892 pounds. There is no evidence of the weight of the liners unpacked, nor the weight of the packing, but apparently the trial court accepted the government figures as the packed weight. The discrepancy may arise because of the weight of packing materials and Eimco's contract provided that the goods would be delivered at York free of drayage charges which would necessarily include the entire weight.

There is further the question of the rate to be charged back to Eimco. Hardinge claims that the rate should be $1.430 cwt., which would be the normal rate of shipments between Salt Lake City and either York or Marietta. Eimco did not contract to pay the standard freight rate, but rather to pay the cost of shipment to York, and hence should be entitled to any reduction available. Therefore, the lower court was correct in applying the amount charged against Hardinge by the government as the basis of Eimco's liability to Hardinge.

Judgment of the lower court is affirmed. Costs to respondent.

CROCKETT, HENRIOD and WADE, JJ., concur.

WOLFE, C. J., does not participate.