No. 22252.

THE SOUTHLAND CORPORATION, A TEXAS CORPORATION *v.* D. C. BURNS REALTY & TRUST CO., INC., A COLORADO CORPORATION, TRUSTEE.

(444 P.2d 394)

Decided August 19, 1968.

HOLME, ROBERTS & OWEN, E. M. HEPPENSTALL, THOMAS C. SEAWELL, RICHARD SCHREPFERMAN, for plaintiff in error.

LYLE E. MILLER, for defendant in error.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

THE sole issue presented by this writ of error is whether the trial court properly found that a lease agreement between the plaintiff in error, Southland, as tenant, and the defendant in error, Burns Realty, as

landlord, prohibits the tenant from selling gasoline in conjunction with its operation of a drive-in grocery on the leased premises. Based on this finding, the trial court permanently enjoined Southland from selling gasoline. From this judgment, Southland prosecutes this writ of error claiming that the lease agreement does not restrict it from selling gasoline on the leased premises.

The landlord, Burns Realty, initiated the trial court action for a permanent injunction when Southland on October 14, 1965 commenced the installation of gasoline tanks and pumps for the sale of gasoline on the leased premises located in Jefferson County. This was temporarily enjoined pending trial of the basic issue of whether the lease agreement provided for a restriction or prohibition against the sale of gasoline by Southland. Burns Realty, in its complaint, alleged that the land and improvements leased to Southland in 1963 are a part of an overall commercial development owned by it, and that if Southland engaged in selling gasoline in direct violation of the lease agreement, it would affect materially the profits which Burns Realty might expect to receive from other leases in the immediate vicinity. In addition, it was stipulated that Burns Realty would experience difficulty in consummating other new leases for the sale of gasoline in the vicinity.

Southland's answer in substance denied that the lease agreement prohibited the sale of gasoline on the leased premises. In addition, Southland counterclaimed against Burns Realty for damages resulting from the injunctive orders pending trial and for a declaratory judgment that it is entitled to construct gasoline dispensing facilities and to sell gasoline under the terms of the lease agreement.

The issue was presented to the trial court on stipulated facts and the lease agreement. In accordance with R.C.P. Colo. 112(e), the issue is likewise presented to this court on an agreed statement, which essentially incorporates the facts as set forth in the foregoing paragraphs.

In decreeing a permanent injunction enjoining Southland from constructing, operating or maintaining facilities on the leased premises for the sale of gasoline, the trial court made this finding:

"The Court finds from a careful study of the lease and other documents of record that the intent of the parties at the time these documents were entered into, self-service gasoline pumps were not a normal part of the business of drive-in groceries or supermarkets and none commonly operated within the Denver area and certainly were not within the purview of the parties at the time this lease agreement was entered into. The lease provides the purpose for which the premises are to be used, and the Court finds this does not include self-service gasoline pumps."

We disagree with the trial court's finding, and hold that the lease agreement between the parties does not prohibit the sale of gasoline on the leased premises. From our examination of the lease document, one obvious feature is noted. It does not contain any provision specifying the purpose for which the premises are to be used.

The trial court's finding that self-service gasoline pumps "certainly were not within the purview of the parties at the time this lease agreement was entered into" is unfounded. Neither the lease or the stipulation warrants this finding. Similarly, the other finding that ". . . the lease provides the purpose for which the premises are to be used" lacks any support in the stipulation or the lease document which was the only evidence before the trial court. The stipulation does state that when the lease was executed gasoline was not commonly sold in the Denver vicinity by drive-in grocery stores. In our view, this alone creates no basis for inferring any intention of the parties when they executed the lease. From the lease document and facts here stipulated, we hold that it is not possible to infer that the parties intended or contemplated any restrictions as to South-

land's extension of its grocery business by adding the sale of gasoline.

■ Had the lease contained a provision that the premises were to be used as a drive-in grocery, then there would have been opened up the issue of extensiveness of use under the facts of this case. On this basis, the court could have properly examined all the circumstances prevailing at the time the lease was executed, and by the application of well-established canons of construction, apply limitations or restrictions which were logically and necessarily implied when the landlord and tenant expressed in their lease contract the purpose for which the premises were to be used. General or indefinite terms employed in a purpose provision may thus be explained or restricted as to their meaning or application. These rules of construction with reference to a purpose provision are well expressed in *Bevy's Dry Cleaners v. Streble*, 194 N.E.2d 595 (Ohio) which involved a suit against a lessee who sought to extend his laundry business by installing dry cleaning machines. The laundry operator's lease specified that the premises were to be used as a self-service laundry. The trial court's injunction against the laundry operator's venture into the dry cleaning business was upheld on the basis of the provision specifying the use agreed upon by the landlord and the tenant and by the application of the rules of construction described heretofore in this paragraph.

Burns Realty argues that Article 22 of the lease should be interpreted not only to indicate a use, but to constitute a restriction against the sale of gasoline by Southland. Article 22 of this lease agreement is entitled "Exclusive Right" and in pertinent part states:

"The Landlord does hereby grant to the Tenant the exclusive right within the Green Mountain Village — Triangle Shopette Center to conduct the business of selling goods, wares and merchandise normally sold by supermarkets or drive-in groceries, including, but not

limited to beer, notions, drugs, magazines, toys, nursery items, novelty items and household items."

This provision of the lease does not purport to state the uses to which the leased premises may be put or any restriction on use. Rather, it grants to Southland the exclusive right to pursue certain activities within the shopette center; that the parties intended this provision only as a right for the benefit of Southland is amply demonstrated by their including in the November 30, 1964 amendment to the lease remedies for Southland only should Burns Realty as the landlord violate Article 22.

Burns Realty has also directed our attention to Article 25 and another provision of Article 22 of the lease as containing language from which it could be implied that Southland was restricted from selling gasoline in conjunction with its operation of a drive-in grocery. In our view, such an implication could not be breathed into these provisions.

■■ Since the lease does not state any use, the following well settled rule of law as stated in 1 American Law of Property § 3.39 (A.J. Casner ed. 1952) is applicable:

"A tenant may make any use of the premises not illegal and not forbidden by the terms of the lease under which he holds. This rule is subject to the further qualification, however, that he must not so use the premises as to substantially injure the reversion."

We have noted that in *Turman v. Safeway Stores, Inc.,* 132 Mont. 273, 317 P.2d 302, the Supreme Court of Montana in a recent case quite similar to the case at bar adopted the rule of law quoted above. In that case, Turman leased commercial property to Safeway under a written lease for a term of 33 years. Among other things, the lease gave to Safeway the exclusive right to sell groceries within a prescribed area. Safeway conducted a retail food store on the leased premises for a period of about 11 years before it sub-leased to a third

party for a period of 12 years. The third party began to conduct a motor sales and garage business on the premises. Thereupon, the landlord sued for a declaratory judgment that the use of the premises for a garage was not permitted by the lease, and for an injunction to prevent this use. The Supreme Court of Montana affirmed the judgment of the trial court that the use of the premises for garage purposes did not violate the terms of the lease and set forth the following rule of law which, in our view, is applicable to the case at bar:

"The rule is that lessee is entitled to use the premises for any lawful or valid purpose, without interference on the part of the landlord, so long as such use is not forbidden by express provisions of the lease or by some necessarily implied construction thereof, and does not amount to waste or destruction of the property."

For the reasons heretofore given, we not only hold that the trial court erred in permanently enjoining Southland from constructing facilities for the sale of gasoline and from selling gasoline but that Southland should have prevailed on their prayer for declaratory judgment that the lease permits Southland to construct the facilities and to sell gasoline in conjunction with its operation of a drive-in grocery.

The judgment is reversed and the cause is remanded for entry of a declaratory judgment in favor of Southland and for other proceedings as may be required by virtue of Southland's counterclaim.

MR. JUSTICE KELLEY not participating.