488 P.2d 302

**Grant VERNON, Plaintiff and Appellant,**

**v.**

**LAKE MOTORS and Ford Motor Company,
Defendants and Respondents.**

No. 12334.

Supreme Court of Utah.

Aug. 30, 1971.

Pugsley, Hayes, Watkiss, Campbell & Cowley, Philip C. Pugsley, Salt Lake City, for plaintiff and appellant.

Ray R. Christensen, Salt Lake City, for Ford Motor Co.

Don J. Hanson, Salt Lake City, for Lake Motors.

CROCKETT, Justice:

Plaintiff brought this action against Lake Motors, seller, and Ford Motor Company.

manufacturer, for damages to his Mercury automobile which was ruined by a fire which originated under the dashboard. The plaintiff based his case on the theories of breach of warranty and of negligence. At the conclusion of plaintiff's evidence, the trial court granted motions for directed verdict in favor of both defendants and discharged the jury. He rejected defendants' contention that the plaintiff had failed to make a case on the issue of breach of warranty, but based his ruling on the grounds that "Grant Vernon's conduct in turning the car over to his wife * * * when he knew there was trouble in the electrical circuit * * * constituted contributory negligence as a matter of law, or such conduct on the part of the owner as to constitute a defense against a breach of warranty on the automobile."

In September 1967, the Vernons, who lived near Coalville, about 40 miles east of Salt Lake City, purchased a new Mercury Marquis from defendant Lake Motors at Salt Lake City. They received with it a booklet containing the following:

### BASIC WARRANTY

Ford Motor Company warrants to the owner each part of this vehicle to be free under normal use and service from defects in material and workmanship for a period of 24 months from the date of original retail delivery or first use, or until it has been driven for 24,000 miles, whichever comes first.

Essentially the same warranty was included in the "order" contract between Lake Motors and plaintiff.

The fire which started under the dashboard of plaintiff's car occurred on May 23, 1968, about 8½ months after the purchase. In accordance with instructions from Lake Motors, the defendants had not had the car serviced by anyone else, but on four occasions had brought it in to them to take care of other difficulties. On the morning of the 23d, Mr. Vernon drove it into Coalville to get a haircut. Upon his return, in response to his wife's inquiry about the car he responded: "We are having trouble with the windshield wipers again." And that "there was something that was burning and a little smoke came from it * * *. They won't shut off." He had driven it in to the Ford agency at Coalville, who seemed "a little upset" because plaintiff hadn't purchased the car there and "they just said they didn't have time to do anything about it."

Mrs. Vernon had two purposes for going to Salt Lake that morning: to take the car in to the defendant Lake Motors for its 10,000-mile checkup; and to attend a dance recital her granddaughter was to be in. In regard to the decision to drive the car to Salt Lake that morning she testified:

Q   Were you concerned about this?

A   I was very much concerned.   I went out and seen that all the windows were rolled up tight, turned the motor on and let it run for at least fifteen minutes; then when I went back out I did this to notice if there was still any smoke that was accumulating in the car.   There was no smoke.   I discussed it with Mr. Vernon.   He said: *"I don't think there is anything that could happen more than blow out some fuses."*   He said: *"There is nothing left for you to do, only take it in to your appointment."*   (Emphasis added.)

She states that there was no smoke when she started out.   Although the wipers wouldn't turn off, it was storming and she would have needed them anyway.   She noticed no smoke until she was about three-fourths of the way to Salt Lake, as she approached the top of "Parley's Summit." Then "there was a puff of smoke" and an odor that came from under the instrument panel.   She pulled off the road, turned off the key, and proceeded to get out of the car, but:

Q   You say that the engine started?

A   The motor started, the lights came on, and the horn started to honk.

Q   Was the key turned off at that point?

A   Yes, sir.

Q   As you were there did anyone stop to help you?

A Yes. There was a large yellow truck in just seconds that stopped and he tried to help me.

Q Did that truck have a fire extinguisher?

A He had a large fire extinguisher but the fire was all enclosed, both from the motor side and from the inside of the car. It was closed; you couldn't possibly get anything in to where it was burning.

Q Did you lift up the hood of the car?

A Yes, sir.

Q Was there any way to reach the fire from that side?

A No, sir.

Q When you opened up the door of the car, was it then possible to get foam or whatever it was from the fire extinguisher to the fire?

A No, sir; it had to burn through before you could get anything in there to do any good.

Despite their efforts the fire was extinguished only after it had burned through the instrument panel and had done the extensive damage herein sued for. It was then towed to Schefski's garage at Salt Lake City. Mr. Kenneth E. Schefski, garage man and mechanic of 20 years' experience, testified that upon as thorough an examination as could be made of the car in the condition he found it, it was his opinion that the fire resulted from a short in the electrical wiring under the dashboard.

In reviewing the directed verdict on the ground that the plaintiff was guilty of contributory negligence as a matter of law there are certain propositions to be kept in mind. First, we agree with the principle that even if there be breach of warranty, there may be circumstances under which the plaintiff's own conduct would preclude his recovery. We are aware that it is sometimes said that contributory negligence is not a defense to such an action.[1] This may well be true if the effect of his conduct is simply to put the warranty to the test; this does not and should not eliminate the warranty, nor defeat a plaintiff's right to a proper recovery for its breach. But a distinction is to be made between that recovery and the recovery for damages proximately caused by a malfunction resulting from the breach of warranty.

■ On the subject of contributory negligence as a defense to a cause of action based on breach of warranty the eminent authority Prosser says:

A few decisions have said flatly that it is not. [Citing cases.] The greater num-

1. See Prosser on Torts, 656 (3d Ed.) and Frumer & Friedman, Products Liability, Sec. 16.01(3), both citing Bahlman v. Hudson Motor Car Co., 290 Mich. 683; 288 N.W. 309; Chapman v. Brown, 198 F.Supp. 78 (D.Hawaii), on appeal, affd. 304 F.2d 149 (9th Cir.); Challis v. Hartloff, 136 Kan. 823, 18 P.2d 199.

ber have said quite as flatly that it is. [Citing cases.] * * *. Those which have permitted the defense all have been cases in which the plaintiff has discovered the defect and the danger, and has proceeded nevertheless to make use of the product. *They represent the form of contributory negligence which consists of deliberately and unreasonably proceeding to encounter a known danger*, and overlaps assumption of risk.[2] (Emphasis added.)

The emphasized language appears to be the theory of the defense herein. We accept as correct for this purpose: that if the plaintiff knows of the defect and the danger, but nevertheless "deliberately and unreasonably" goes ahead, he should be precluded from recovery. We further think that the nicety of terms should not be of controlling importance. The test stated harks back to the usual standard of reasonable care under the circumstances; and failure to meet it should be deemed a form of contributory negligence.

■ The second proposition is that the charge of improper conduct against the plaintiff is one which must be affirmatively proved, the same as other forms of contributory negligence.[3] Accordingly, if the evidence is such that reasonable minds acting fairly thereon might remain unconvinced that he failed in his duty of care under the circumstances, then the trial court could not properly rule that he so failed as a matter of law. And to state the matter conversely, *only* if upon the evidence presented, all reasonable minds would necessarily conclude that the plaintiff failed in such duty of care would the directed verdict be justified; and whenever reasonable minds may differ on the question it is for the jury.[4] In analyzing whether the foregoing tests are met, inasmuch as the trial court rejected the plaintiff's claims, it is our duty to survey the evidence, and any reasonable inferences that could fairly be drawn therefrom in the light favorable to his contentions.[5]

■ Turning to the evidence in the light of the foregoing rules, the fact situation may well have looked to the jury somewhat as follows: that the Vernons having purchased their car new, it would not be unreasonable for them to believe that there would not be anything seriously wrong with it; that after the trouble with the wipers developed, they had exercised some precaution by going to the Ford garage in their

2. Prosser on Torts, 656–57 (3d Ed.).

3. Miller v. Southern Pacific Co., 82 Utah 46, 21 P.2d 865.

4. See Shortino v. Salt Lake & U. R. Co., 52 Utah 476, 174 P. 860; Stickle v. Union Pacific R. R. Co., 122 Utah 477, 251 P.2d 867.

5. See Newton v. Oregon Short Line R. Co., 43 Utah 219, 134 P. 567, Stickle v. Union Pacific R. R. Co., note 4, supra.

town to seek help (even though without success); that not knowing themselves how to fix it, they didn't have much choice other than to take it to defendant Lake Motors in Salt Lake; that this, coupled with the desire to go to the dance recital, may have seemed to them a matter of necessity, and perhaps even urgency, to make that trip; that some precaution was also taken to determine whether the condition was dangerous; and that the Vernons weighed all this against whatever other alternatives may have existed and made the decision that the car should be driven to Salt Lake. It is our opinion that upon so viewing the circumstances, some reasonable minds might well remain unconvinced that the plaintiff had failed to use the degree of care which an ordinary, reasonable and prudent person would have observed under the circumstances; and that consequently, the issue is one which the plaintiff has a right to have determined by a jury.

■ This case being remanded for a new trial, we recognize both our duty and the desirability of ruling on other questions of law that may arise therein.[6] Defendant Ford Motor Company in its brief has challenged the trial court's rejection of its contention that the plaintiff had failed to make a case on the ground of breach of warranty. It argues that to do so plaintiff must specify which parts were defective and the nature of the defect; and cites authority which under certain fact situations have so indicated.[7] They seem to argue that this proof can only be made by direct evidence. As to the latter contention, circumstantial evidence is adequate as proof if its quality is such that the jury believes that the greater probability of truth lies therein.[8] A fire breaking out underneath a dashboard is a circumstance which cries out for explanation. Looking at the evidence in the light of common sense and experience, the minds of jurors acting fairly thereon could arrive at conclusions with reasonable certainty. When there is added thereto the opinion of the expert, Mr. Schefski, that it resulted from a fault in the electric wiring, it would not strike us as being unreasonable for a jury to conclude therefrom that the fire resulted from a defect in the mechanism of the automobile as covered by the warranty hereinabove quoted.

■ These further observations are to be made in regard to the defendants' contention that the plaintiff must specify and prove exactly which part was defective before he can recover under the warranty.

6. See Weber Basin Conservancy Dist. v. Ward, 10 Utah 2d 29, 347 P.2d 862; Rule 76(a), U.R.C.P.

7. See Haas v. Buick Motor Division of General Motors Corp., 20 Ill.App.2d 448, 156 N.E.2d 263; Bass v. General Motors Corp., 447 S.W.2d 443 (Tex.Civ.App.).

8. See 30 Am.Jur.2d 248.

The warranty should be given effect, not in any unduly precise or technical interpretation, but in accordance with what the ordinary purchaser would understand from its language;[9] and if there is any uncertainty therein as to how it should apply, the conduct of the parties in performing under it may be looked to to determine its meaning.[10] On the four previous occasions referred to above, when the Vernons had taken the car to Lake Motors to have defects remedied under the warranty, they had not been expected or required to make the determination and specify the defect as a condition precedent to the defendants' fulfillment of the warranty. In each instance the latter had assumed the responsibility of locating and rectifying the difficulty. This is undoubtedly how the warranty would have worked had Mrs. Vernon arrived at Lake Motors that morning: they would have assumed and discharged their obligation to determine what was wrong and fix it.

Defendant Ford Motor also argues that there is a failure of proof that any defect which may have existed was in material or workmanship for which it was responsible because the other defendant,

Lake Motors, had done some repair work under the dashboard after the car was sold. We think the problems as to the rights inter se between the defendants Lake Motors and Ford Motor Company are not germane to this appeal by the plaintiff. Insofar as he is concerned, they both gave him the warranty. That of Ford provides that "all warranties shall be fulfilled by the selling dealer [Lake Motors] * * * replacing with a genuine Ford or Ford-authorized reconditioned part, or repairing at his place of business, free of charge including related labor, * * *." This warranty speaks for itself and indicates that Lake is at least Ford's agent to keep the warranty; it would be bound with the conduct of the agent within the scope of that undertaking, and it would seem that the plaintiff is not concerned with what other arrangements they may or may not have between themselves.[11]

Based upon what we have said herein, our conclusions are: (1) that the trial court was correct in refusing to rule as a matter of law that the plaintiff had failed to make out a cause of action on breach of warranty; and (2) that the plaintiff is entitled to have the question of his contributory negligence decided by a jury.

9. See Barrus v. Wilkinson, 16 Utah 2d 204, 398 P.2d 207; Maw v. Noble, 10 Utah 2d 440, 354 P.2d 121.

10. See Bullough v. Sims, 16 Utah 2d 304, 400 P.2d 20; Hardinge Co. v. Eimco Corp., 1 Utah 2d 320, 266 P.2d 494.

11. See Malia v. Giles, 100 Utah 562, 114 P.2d 208; also Santi v. Denver & R. G. W. R. Co., 21 Utah 2d 157, 442 P.2d 921.

Remanded for further proceedings not inconsistent with this decision. Costs to plaintiff (appellant).

CALLISTER, C. J., and TUCKETT, J., concur.

ELLETT, Justice (concurring in the result).

I concur in remanding the case for trial; however, I do not think contributory negligence has anything whatsoever to do with liability or the right to recover. This is an action for breach of warranty and the normal damages to be recovered should be the market value of the car as warranted less the market value of the car in its defective condition. Where a claim is asserted by a buyer for losses other than normal damages,—as is so in this case—there is a requirement that the loss be one which the seller should have contemplated, when he made the sale of the defective machine, as being a likely result of the breach of warranty. There is a further requirement that the plaintiff cannot recover for damages which he should have reasonably avoided.[1]

Contributory negligence has nothing to do with the *right* to recover and cannot be made the basis of a dismissal of a cause of action for breach of warranty. However, negligence on the part of a plaintiff may have a bearing on the amount of his recovery.

The main opinion cites Prosser on Torts. However, the cases relied upon by Prosser to support his text are all tort cases. I can see that if a plaintiff uses a chattel, which he knows to be defective, or in the exercise of ordinary care should so know, and, as a result thereof he is injured by that defect, then contributory negligence would be a defense to an action for the injuries received.

On remand of this case there should be only two matters for trial: (1) Was there a breach of warranty? and (2) If so, what damage did plaintiff sustain as a result of that breach?

HENRIOD, Justice (dissenting).

I respectfully dissent. Although the main opinion selects facts out of context to arrive at a result negativing the defense of contributory negligence, it seems to me that the evidence of such negligence, even as stated in the opinion, clearly, and as a matter of law, gave ample warning that there was something dangerous and radically wrong with the electric system of this car,—and that evidence was brought out by plaintiff's own wife. Plaintiff did not even testify in this case. Smoke coming from underneath the dashboard of a car, accompanied by an obviously dangerous circumstance that the windshield wipers could not be controlled, should alert any reason-

---

1. McCormick on Damages (Hornbook Series), p. 673.

able person that a car should not be driven 30 or 40 miles over a highly-traveled interstate highway in mountainous terrain in a snowstorm. To do so seems to constitute negligence per se, not subject to any alternative conclusion, where the facts were in no way controverted, but admitted by everyone, and actually adduced, without controversion, by plaintiff in his case in chief.

Secondly, there was no evidence of any negligence or breach of warranty by defendants at all, and for aught we know from this record, the causa causans of the damage here as well may have been the attempt by any teenage vocational training student, who may have been frustrated in his attempt to purloin the car by crossing wires under the dashboard,—one of the most convenient, tempting and most easily accomplished feats of thieves, both adult and juvenile, so I have heard. There was absolutely nothing in this case to go to a jury save conjecture,—and plaintiff's lamentable attempt to prove negligence on the basis of the res ipsa loquitur theory seems somewhat superficial, since there was no element of control by defendants over the vehicle whatever. The fact that a mechanic *thought* the fire was the result of "fault in the electric wiring," ironically is not only the strongest, but at the same time the weakest evidence of negligence on the part of defendants, because it had absolutely no probative value as to

*who* caused the fire at all,—leaving the whole matter of causation in this case to unmitigated guesswork and unabashed conjecture,—which should not be playthings for juries or time bombs directed against insurance or other companies.