George ZEESE and Emily Zeese, his wife,
Plaintiffs and Appellants,

v.

ESTATE of Max SIEGEL et al., Defendants
and Respondents.

No. 13870.

Supreme Court of Utah.

April 7, 1975.

Marcus G. Theodore, of Stone & Theodore, Merrill K. Davis, Salt Lake City, for plaintiffs and appellants.

Richard L. Blanck, Michael F. Heyrend, Arthur H. Nielsen, Salt Lake City, for defendants and respondents.

MAUGHAN, Justice:

Plaintiffs initiated this unlawful detainer action to recover possession of approximately one acre of real property upon which defendant, Trailer Mart, Inc., dba Patton's Travelers, was conducting the business of selling trailers and recreational vehicles. Plaintiffs claimed that defendant[1] was a month-to-month tenant, who had refused to vacate the premises after being served with a notice-to-quit. In the alternative, plaintiffs pleaded that if defendant had a valid leasehold interest, it was subject to forfeiture for defendant's continuing breach of a use covenant in the lease agreement.

Plaintiffs, as lessors, executed a written lease agreement with Saturn Oil Company with an initial term of ten years, commencing December 18, 1959. After a series of mesne conveyances of the leasehold interest, the lease was assigned to Max Siegel by Husky Oil Company on May 1, 1969. By terms of the lease such an assignment was permissible without the consent of the lessor. Prompt notification of the assignment was given to the lessor.

On May 8, 1969, the attorney for Max Siegel sent a letter to plaintiffs, wherein he stated:

Mr. Siegel has asked me to further advise you that Trailer Mart, Inc. doing business as Dan's Campers, entered into substantial commitments to acquire additional inventory because of the additional display area made available as a result of the assignment of the lease above referred to.

Moreover, both Mr. Siegel and Trailer Mart, Inc. have committed themselves to a significant advertising program based upon the thus expanded sales facilities.

Please be assured that both Mr. Siegel and Trailer Mart, Inc. will comply with all of the obligations of the lessee under the lease referred to hereinabove.

The defendant corporation was wholly owned by the Siegel family, Max Siegel was the President. The trial court found that at all material times Max was acting as an agent and officer of defendant. On May 8, 1969, defendant took possession of the property and so continued at all times thereafter, using the property for the

1. Throughout this opinion, defendant shall refer exclusively to Travel Mart, the other defendants will be individually identified.

display and sale of campers and recreational equipment.

Max Siegel died on June 3, 1969. Eva Siegel, widow and designated executrix of Max Siegel, sent a letter, dated June 16, 1969, to plaintiffs, giving notice of the exercise of the option to renew in the lease for an additional term of ten years.

Plaintiff, George Zeese visited the premises in May 1969, and on numerous occasions thereafter and observed the business conducted thereon by defendant. On January 15, 1973, Dan Siegel, the president of defendant sent a letter notifying George Zeese, who at all times was acting as agent for his wife, that defendant was changing the name under which it did business from Dan's Trailer N'Camper to Patton's Travelers. Commencing on May 16, 1969, and continuing through June 12, 1973, defendant sent monthly rental checks in the sum of $200 each to plaintiffs, which were all cashed by plaintiffs in the ordinary course of business. Defendant further paid all real property taxes assessed in 1969, 1970, 1971, 1972. After this action was commenced, the monthly rental payments and the sum owing for the property taxes were deposited with the clerk of the court.

During September 1970 and continuing at intervals thereafter, through September 1972, George Zeese and Dan Siegel conducted negotiations concerning the sale of the property. George Zeese had occasion to visit the property during the course of these negotiations; at no time did he deny the existence of a valid lease. Prior to June 1973, the time that the notice-to-quit was served, plaintiffs never gave defendant any notice or reason to believe that defendant was holding the premises as a month-to-month tenant or that plaintiffs considered defendant's use of the property was in contravention of the use covenant in the lease. Furthermore, the plaintiffs had actual notice through conversations with the defendant's president, Dan Siegel, that defendant believed that it possessed the premises pur-

suant to a valid and enforceable lease, and at no time prior to the filing of this action did plaintiffs make an assertion to the contrary. Furthermore, prior to June 1973, plaintiffs never gave notice to defendant that they considered the exercise of the option by Eva Siegel in June of 1969 invalid.

In reliance upon both the validity of the assignment and the exercise of the option to renew as vesting in defendant a leasehold interest in the demised premises, defendant performed the following acts:

A. On August 6, 1969, defendant purchased from Husky Oil Company all of the buildings, equipment, and other personal property owned by Husky and located on the premises.

B. In May and June of 1969 and at various times thereafter, defendant purchased and caused to be erected on the premises certain signs to advertise and identify its business.

C. Defendant arranged and paid for the grading and paving of certain portions of the surface of the premises.

D. Pursuant to the instructions and request of George Zeese, defendant had the property surveyed and a fence erected to define the boundary and secure the premises from encroachment by an adjacent property owner. Defendant paid for both the survey and the fence.

The foregoing is a resume of the pertinent findings of the trial court. Based thereon, the trial court determined that defendant's use of the premises did not violate the use provisions contained in the lease; that the leasehold interest in the property was validly assigned to defendant and was confirmed through continued possession and use of the property; that Eva Siegel exercised the option to renew in accordance with the terms of the lease, which inured to the benefit of defendant; that plaintiffs have waived and are estopped from asserting any defects either in the assignment of the lease from Husky Oil to defendant or the exercise of the option to renew; and that defendant has a

leasehold interest in the premises pursuant to the lease agreement with a term continuing through December 17, 1979, and with options to renew thereafter as provided therein.

On appeal, plaintiffs contend that the trial court erred when it determined that Max Siegel acted as an agent for defendant when he took an assignment of the lease from Husky Oil Company. Specifically, plaintiffs claim that Max Siegel signed the assignment as an individual, and under the parol evidence rule testimony cannot be introduced to establish that Max was an agent of defendant.

■■■ The contract of an agent is the contract of the principal, and the principal, although not named therein, may sue or be sued thereon. Although an agreement reduced to writing may not be contradicted or varied by parol evidence, the principal may introduce evidence to show that the agent, who made the contract in his own name, was acting for him. This proof does not contradict the writing but merely explains the transaction.[2]

Plaintiffs further contend that Max Siegel was not authorized in writing by defendant to act as its agent; and, therefore, the assignment was void under Sections 25-5-1 and 3, U.C.A.1953, of the Statute of Frauds.

Defendant was an assignee and lessee under the assignment of the lease agreement. These two statutory provisions require that an agent of the lessor, or the assignor, granting an interest in land for a term exceeding one year, must be authorized in writing. There is no requirement within the cited statutes that the agent of an assignee or lessee must be authorized in writing. Furthermore, Section 25-5-9, U.C.A.1953, provides:

> Every instrument required by the provisions of this chapter to be subscribed by any party may be subscribed by the lawful agent of such party.

■■■ A lease agreement for a term longer than a period of one year creates an interest in real property, but, in addition, it is a contract. The obligations of a lessee are contractual and the applicable provision under the Statute of Frauds is set forth in Section 25-5-4(1), U.C.A.1953, namely, every agreement that by its terms is not to be performed within one year of the making thereof shall be void unless such agreement is in writing subscribed by the party to be charged therewith. There is no requirement that the agent of the lessee or assignee be authorized in writing to execute the lease or the assignment, and Section 25-5-9, U.C.A.1953, affirms the right of a lawful agent to subscribe the document on behalf of his principal.

Plaintiffs claim that trial court erred in its determination that Eva Siegel was the agent of defendant and acting in its behalf when she exercised the option to renew the lease. In the written notice sent to plaintiffs, Eva Siegel stated that on behalf of the estate of Max Siegel, she was advising and notifying the Zeeses of the exercise of the option to renew the lease assigned by Husky Oil Company to Max Siegel. Eva identified herself as the executrix named in the last will and testament of her husband, Max Siegel. Plaintiffs urge that this letter was sent on behalf of the estate of Max Siegel and not on behalf of the defendant; and, therefore, it constituted neither notice nor an exercise of the option to renew.

This letter was sent fifteen days after the death of Max Siegel. The defendant was wholly owned by the Siegel family, who intended to continue the family business. Dan Siegel testified: "When Max died we were trying to cover a lot of loose ends. This seemed to be one of them. It seemed appropriate for the Executrix of the Estate to notify Mr. Zeese, who had undoubtedly heard of Max's death, that the business was going to be carried on and we did it in the form of an exercise of the

---

2. Jensen v. O.K. Investment Corp., 29 Utah 2d 231, 235, 507 P.2d 713 (1973).

option. When you are doing business on a day-to-day basis you often don't look toward the niceties of the legal entities and we simply, as you can see from the document, exercise it in that manner."

■ If there were confusion as to the authority of Eva Siegel to act in behalf of the defendant, her exercise of the option was ratified, by the acts and conduct of the defendant, the principal.[3] Even if Eva's act were deemed unauthorized, plaintiffs right to withdraw from the transaction was only prior to the time that it was ratified by the principal, thereafter, they were bound.[4] Ratification relates back to the time when the unauthorized act was done; and although the act may have done without any precedent authority, ratification creates the relation of principal and agent.[5] Eva exercised the option in June, 1969; plaintiffs did not challenge the validity of her act until June 1973; during the interim, the acts and the conduct of plaintiffs indicated an acceptance of the notice as an effective exercise of this contract right. For a period of four years plaintiffs dealt with defendant as the lessee, they are estopped by this conduct to take the inconsistent position that defendant did not have a leasehold interest.[6]

Plaintiffs further urge that the trial court erred in its determination that defendant's use of the property was not a breach of the use covenant in the lease.

■ A lessee is entitled to use the premises for any lawful or valid purpose without interference on the part of the landlord, so long as the use is not forbidden by express provisions of the lease or by some necessarily implied construction thereof, and does not amount to waste or destruction of the property.[7]

Plaintiffs urge that the provisions in the lease agreement expressly forbid the business being conducted on the premises by defendant. The revelant provisions state:

> TO HAVE AND TO HOLD all of the same unto Lessee, subject to the conditions herein contained, and for no other purpose or business than that of the construction, installation, maintenance and operation of the necessary buildings, structures, driveways, approaches, tanks, pumps, signs, lighting equipment, or appliances for the operating upon said premises the business of storing, marketing and distributing petroleum products and commodities marketed in connection therewith, AND for the operation of a gasoline and oil filing service station, a truckers lodge, and restaurant, AND for the dealing in generally of such goods, wares and merchandise as are customarily displayed, purchased and sold at the establishments of the type herein referred to, OR any other lawful business.

The lessees in the chain of title prior to defendant were all engaged in the conduct of gasoline service stations; so any interpretation of the use covenant prior to defendant's occupancy was unnecessary. The terms of the covenant are ambiguous, since initially the use is confined to certain specified businesses, then an additional use is permitted by a clause introduced by the disjunctive "or," i. e., "any other lawful business." However, it is unnecessary for this court to construe this covenant independently of the interpretation made by the parties to this action. Plaintiffs had had actual notice from the day defendant went into possession of the type of use being made of the premises. Although George Zeese was frequently upon the premises he never expressed an opinion that defendant's use was in violation of the covenant.

3. 3 Am.Jur.2d, Agency, § 162, p. 550.

4. 3 Am.Jur.2d, Agency, § 184, p. 569.

5. 3 Am.Jur.2d, Agency, § 183, p. 568.

6. Grover v. Garn, 23 Utah 2d 441, 447, 464 P.2d 598 (1970).

7. Turman v. Safeway Stores, Inc., 132 Mont. 273, 317 P.2d 302 (1957) ; Southland Corp. v. D. C. Burns Realty & Trust Co., 166 Colo. 444, 444 P.2d 394 (1968).

 Under the doctrine of practical construction, when a contract is ambiguous and the parties place their own construction on their agreement and so perform, the court may consider this as persuasive evidence of what their true intention was. The parties, by their action and performance, have demonstrated what was their meaning and intent; the contract should be so enforced by the courts.[8]

The trial court did not err in dismissing plaintiffs' action with prejudice. The judgment is affirmed; costs are awarded to defendants.

HENRIOD, C. J., and ELLETT, CROCKETT and TUCKETT, JJ., concur.

8. Bullfrog Marina, Inc. v. Lentz, 28 Utah 2d 261, 268, 501 P.2d 266 (1972) ; Bullough v. Simons, 16 Utah 2d 304, 308, 400 P.2d 20 (1965) ; Vernon v. Lake Motors, 26 Utah 2d 269, 275, 488 P.2d 302 (1971) ; Hardinge Co. v. Eimco Corp., 1 Utah 2d 320, 323, 266 P.2d 494 (1954).