**2017 UT App 40**

# THE UTAH COURT OF APPEALS

SHARON SMITH,
Appellee and Cross-appellant,

*v.*

KEITH SMITH,
Appellant and Cross-appellee.

Opinion
No. 20150354-CA
Filed March 2, 2017

Third District Court, Tooele Department
The Honorable Robert W. Adkins
No. 134300466

Michael D. Black, Attorney for Appellant
and Cross-appellee

Troy L. Booher and Julie J. Nelson, Attorneys for
Appellee and Cross-appellant

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGES
GREGORY K. ORME and JILL M. POHLMAN concurred.

ROTH, Judge:

¶1      Keith Smith appeals from a divorce decree, claiming that
the trial court misinterpreted the terms of a family trust and, as a
consequence, improperly allocated certain property between the
spouses. We affirm.

BACKGROUND

¶2     Sharon Smith and Keith Smith married in 1979. Sharon[1] came from a farming family with sufficient assets to enable Sharon's mother to help the couple financially from time to time. To protect and pass her assets on to her children, Sharon's mother created the Luveda Fincher Family Limited Partnership (the Family Partnership), which included Sharon and her siblings as limited partners. In 2002, Sharon's mother modified the structure of the Family Partnership to begin distributing a portion of its assets to her children on a monthly basis. Sharon received distributions from the partnership for some years during the marriage and used the money for family expenses.

¶3     In 2006, the Smiths drafted a family trust document to shelter their real and personal property. The Smith Family Trust was comprised of two constituent trusts—the Keith L. Smith Trust and the Sharon L. Smith Trust. All assets transferred into the Family Trust were to be part of one spouse's individual trust as specified in the trust documents, or, if neither individual trust were specifically designated, the property would be "allocated equally between [the individual trusts]." In connection with the creation of the trust, the Smiths executed Schedule A, which was attached to and incorporated by reference in the main trust document.

¶4     Schedule A is the focal point of this appeal and appears to be the primary mechanism through which the Smiths funded the Family Trust. Schedule A contains four subsections, each covering a different category of property. Each subsection includes an ownership designation. Specifically, Schedule A

---

1. As is our practice in cases where both parties share a last name, we refer to the parties by their first name with no disrespect intended by the apparent informality. *Earhart v. Earhart*, 2015 UT App 308, ¶ 2 n.1, 365 P.3d 719.

provided that "property listed under the ownership category KLS is the exclusive property of The Keith L. Smith Trust, property listed as SLS is the exclusive property of The Sharon L. Smith Trust, and property designated KLS & SLS is owned equally by the two Trusts." The two subsections of Schedule A relevant to this appeal read as follows:

> 2. The following accounts in the following institutions, together with all future additions, interest or accumulations therein and also including all new accounts and the accumulations and the future additions, interest or accumulation in any and all other financial institutions in which new accounts are opened in the future:

> Ownership
> KLS & SLS   A.   Tooele Federal Credit Union [individual account information redacted]

> . . . .

> 4. All right, title and interest in and to the following:

> SLS       A.   All interest of Sharon L. Smith in and to Luveda Fincher Family Limited Partnership, an Arizona Limited Partnership.

¶5     After her mother died in 2012, Sharon received a large inheritance distribution from the Family Partnership by check. Sharon deposited the check into two money market accounts in her own name that she had opened for that purpose.

¶6     In 2013, the Smiths separated their joint accounts, and not long after, Sharon filed for divorce. The divorce proceeded to

trial to resolve a number of disputed questions, most of which are not at issue on appeal. Relevant here, Keith argued that he was entitled to half of Sharon's inheritance distribution or, in the alternative, that he was entitled to alimony. The trial court rejected Keith's primary argument and determined that the inheritance money from the Family Partnership was Sharon's separate property and that Keith was not entitled to a share. The court's reasoning was based on two independent decisions. First, the court determined that the inheritance distribution was a traditional inheritance, which is ordinarily considered separate property under Utah law. Second, the court determined that Sharon's inheritance did not thereafter become joint property under subsection 2 of Schedule A when she deposited the money in new accounts because subsection 4 of Schedule A applied to the inheritance check. This "mean[t] all the distributions [from the Family Partnership] belong to [Sharon]" even if she deposited the money into a financial account held in her name.

¶7    Although the court awarded Sharon's inheritance to her alone, it also determined that Keith had unmet financial needs of $502 per month. The court therefore ordered Sharon to pay him that amount in alimony for a term up to the length of the marriage. Keith appeals the court's decision that the inheritance belonged exclusively to Sharon.

ISSUE AND STANDARD OF REVIEW

¶8    The single issue presented in this appeal is whether the trial court properly awarded Sharon the entire inheritance distribution from her family partnership.[2] Typically, "[t]rial

---

2. Sharon filed a conditional cross-appeal asking us to vacate the trial court's alimony award if we reversed the court's award of the inheritance money to Sharon alone. Because we affirm the

(continued…)

courts have considerable discretion in determining property distribution in divorce cases, and will be upheld on appeal unless a clear and prejudicial abuse of discretion is demonstrated." *Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 8, 176 P.3d 476 (ellipsis, citation, and internal quotation marks omitted). However, Keith's argument turns on the trial court's interpretation of Schedule A of the Family Trust document. "A trial court's interpretation of a trust instrument is a question of law, which we review for correctness." *Hull v. Wilcock*, 2012 UT App 223, ¶ 21, 285 P.3d 815 (citation and internal quotation marks omitted).

## ANALYSIS

¶9　Keith does not appeal the trial court's determination that the inheritance distribution itself was Sharon's separate property. Rather, he challenges the trial court's decision that the money did not become joint property under the terms of the Family Trust when Sharon deposited it in the money market accounts. Thus, according to Keith, "[t]he sole issue in this appeal is the proper division of two financial accounts . . . , both held in [Sharon's] name." His arguments are based on subsection 2 of Schedule A (the Financial Accounts Provision). He asserts that the Financial Accounts Provision established that Sharon and Keith were to share equally both the assets in the bank accounts specifically listed in Schedule A, as well as any assets in "'all new accounts . . . in any and all other financial institutions in which new accounts are opened in the future.'" (Quoting the Financial Accounts Provision.) Keith argues that, under the plain language of the Financial Accounts Provision, he

---

(…continued)
court, the condition of the cross-appeal is not satisfied and we do not address it.

became entitled to half of the substantial inheritance distribution once Sharon deposited it in the new accounts.

¶10    Sharon counters that the "trial court correctly concluded that when [she] deposited her separate property into her separate account, it did not morph into marital property" because, among other reasons, the court's decision was "consistent with the plain language of the Family Trust and the intent of the settlors." In support of her argument, Sharon points to subsection 4 of Schedule A (the Partnership Provision), which assigns "[a]ll right, title and interest in and to" the Family Partnership to Sharon alone. Thus, Sharon contends that the Partnership Provision "assigns sole ownership of the inheritance distribution" to her irrespective of the broad language in the Financial Accounts Provision.

¶11    Significantly, Keith does not argue that the distribution itself was marital property in which he is entitled to a share. Indeed, he concedes that "Sharon could take the distribution in cash, reinvest it, spend it, or anything else." But he asserts that, "once Sharon placed [the distribution] in a financial account, the account was joint property and half of the account belonged to Keith." Thus, our review focuses narrowly on the question of whether the inheritance changed in character from separate property to joint property simply because Sharon deposited it into a financial account. We agree with the trial court that it did not.

¶12    "We employ familiar principles of contract interpretation when construing trust instruments." *Dahl v. Dahl*, 2015 UT 79, ¶ 29. "When interpreting a [trust], a court first looks to the [trust's] four corners to determine the parties' intentions, which are controlling." *Bakowski v. Mountain States Steel, Inc.*, 2002 UT 62, ¶ 16, 52 P.3d 1179. When a trust is unambiguous—as both Keith and Sharon agree is the case here—"a court determines the parties' intentions from the plain meaning of the [trust's] language." *Id.*

¶13 Keith's argument turns on the Financial Accounts Provision, which provides that "all new accounts . . . in any and all other financial institutions in which new accounts are opened in the future" will be owned equally by Keith's and Sharon's individual trusts. He relies on that language for the proposition that, "once Sharon placed [her inheritance] in a financial account," the inheritance converted into joint property, and Keith was entitled to half of it.

¶14 Keith's argument would be stronger if the Financial Accounts Provision stood alone. However, "we consider each [trust] provision in relation to all of the others, with a view toward giving effect to all and ignoring none." *JENCO LC v. Perkins Coie LLP*, 2016 UT App 140, ¶ 11, 378 P.3d 131 (ellipsis, citation, and internal quotation marks omitted). We must therefore also consider how the other provisions in Schedule A apply to Sharon's inheritance distribution—in particular the Partnership Provision, which assigns "[a]ll right, title and interest in and to" the Family Partnership to Sharon alone.

¶15 It is uncontested that Sharon deposited her inheritance from the Family Partnership into two newly created financial accounts, where the money remained at the time of the divorce. Although we do not decide the issue, if the terms of the Financial Accounts Provision alone control, Keith might be entitled to half of the assets in Sharon's accounts. If the Partnership Provision controls, however, Sharon is entitled to the total amount of her inheritance. Thus, there is an apparent conflict between the two provisions that we must resolve, and our review hinges on whether a reasonable reading of Schedule A can give effect to both provisions. *Hardinge Co. v. Eimco Corp.*, 266 P.2d 494, 495–96 (Utah 1954) ("[I]f effect can be given to both of two apparently conflicting provisions in a reasonable reconciliation[,] that interpretation will control."); *Big Cottonwood Tanner Ditch Co. v. Salt Lake City*, 740 P.2d 1357, 1360 n.3 (Utah Ct. App. 1987) ("[W]here two seemingly conflicting contract provisions

reasonably can be reconciled, a court is required to do so and to give both effect.").

¶16   Here, another canon of construction helps us to reconcile the apparent conflict, namely the concept that "[g]eneral terms and provisions are restricted by specific terms and provisions following them." 90 C.J.S. *Trusts* § 208 (2016); *see also CoBon Energy, LLC v. AGTC, Inc.*, 2011 UT App 330, ¶ 22, 264 P.3d 219 ("When interpreting contract language, specific provisions ordinarily will be regarded as qualifying the meaning of broad general terms in relation to a particular subject."). "Under this canon, the specific provision is treated as an exception to the general rule." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 183 (2012) (discussing the "general/specific canon" of construction).

¶17   There can be no question that the Financial Accounts Provision is general in nature. Indeed, its language is written in the broadest possible terms, purporting to cover all monies in all accounts created in any financial institution at any point in time after execution of the trust. Conversely, the Partnership Provision applies particularly and exclusively to Sharon's interest in the Family Partnership. And in keeping with general drafting principles and the canons of construction mentioned above, the broad general provision comes before—and is therefore constrained in its breadth by—the specific provision that follows. We therefore read the Partnership Provision as a specific exception to the otherwise broad reach of the Financial Accounts Provision, a reading that harmonizes and gives effect to both provisions of Schedule A. *Cf. Big Cottonwood Tanner Ditch Co.*, 740 P.2d at 1360 n.3. For this reason, we agree with the trial court's interpretation of Schedule A—the inheritance distribution that Sharon received from the Family Partnership was exclusively hers under the plain language of the trust document.

¶18   Our conclusion is supported by other interpretive rules. For instance, Keith's argument—that "Sharon could take the

distribution in cash, reinvest it, spend it, or anything else" so long as she did not deposit it into a financial account—ignores the pragmatic ramifications of reading Schedule A as broadly as he suggests. Given the financial realities of the modern world, we question how an individual could reasonably make use of or even secure a substantial sum of money without utilizing a financial account of some kind. It is simply unrealistic to expect Sharon to store a distribution in cash under the proverbial mattress. Likewise, it is difficult to imagine how Sharon might have undertaken the obvious next step of reinvesting her inheritance without using a financial account at least as an intermediary.[3] Thus, reading Schedule A as Keith proposes works an absurd result to Sharon's substantial detriment by preventing her from using the most commonly available—and almost indispensable—financial tools in conventional ways. *See Selvig v. Blockbuster Enters., LC*, 2011 UT 39, ¶ 28, 266 P.3d 691 (rejecting a proposed reading of a contract because it "would countenance [an] absurd result").

¶19　Keith argues that the provisions of Schedule A can be harmonized under his reading. Specifically, he asserts that the "Partnership Provision is not rendered meaningless" by his reading of the Financial Accounts Provision because "an interest in a limited partnership includes a right to receive distributions, but the actual funds once distributed are not the 'interest' in the partnership." This argument likewise fails to persuade. The claim—that Sharon's entitlement under the Partnership Provision to "[a]ll interest of Sharon L. Smith in and to Luveda Fincher Family Limited Partnership" does not also include all

---

3. We note that the size of the distribution check does not drive our analysis. Rather, it is the general principle of Keith's interpretation and its consequences that are determinative, and those principles apply regardless of whether the check was for $100 or $1 million.

interest in the assets actually distributed—has little to recommend it.[4] An interest is a "legal share in something; all or part of a . . . claim to or right in property." *Interest*, Black's Law Dictionary 934 (10th ed. 2014). And a distribution is the tangible result of "[t]he act or process of apportioning or giving out." *Distribution*, Black's Law Dictionary 576 (10th ed. 2014). Thus, if Sharon's interest in the Family Partnership is her separate property under Schedule A as Keith concedes, an "apportionment or giving out" of some portion of the partnership's assets—here, a distribution of money—must also be exclusively hers. *Cf. distributive share*, Black's Law Dictionary 577 (10th ed. 2014) ("The share of assets . . . that a partner . . . acquires after the partnership has been dissolved.").

¶20 Thus, Keith's argument draws an arbitrary line between Sharon's interest in the Family Partnership and her interest in the benefits derived from it. However, this argument fails for similar reasons that his proposed reading of Schedule A leads to absurd results. If the Financial Accounts Provision instantly converted distributions into joint property as soon as Sharon tried to use the money by placing it into a financial account, then the most obvious benefit of Sharon's sole interest in the Family Partnership—money distributions from its assets—becomes essentially meaningless. Because "we look for a reading [of a written instrument] that harmonizes the provisions and avoids rendering any provision meaningless," *Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 2009 UT 7, ¶ 28, 210 P.3d 263, we reject Keith's proposed interpretation of Schedule A.

¶21 For these reasons, Sharon's reading of Schedule A prevails over Keith's. Her reading achieves the major goals of trust interpretation applicable to these circumstances—it

---

4. The apparent implication of Keith's argument is that, having been given the whole cow, Sharon can use only half the milk.

harmonizes all the provisions of the instrument, renders none of them meaningless, works no absurd results, and thereby best conforms to the intent of the parties as expressed by the plain language of the document.

CONCLUSION

¶22    We conclude that the Partnership Provision set out in Schedule A of the Smith Family Trust established that Sharon's interest in the Family Partnership, including any distribution from the partnership, was her separate and exclusive property and that the Financial Accounts Provision did not transform the inheritance distribution into joint property when she deposited it into financial accounts held in her name alone.

¶23    Affirmed.

——————