MALIA, State Bank Com'r, et al. v. GILES et al.
MOULTON et al. v. BAIRD et al.
MORGAN v. STARLEY, State Bank Com'r, et al.

No. 6253.   Decided June 11, 1941.   (114 P. 2d 208.)

Rehearing Denied November 12, 1941.

*J. Rulon Morgan,* of Provo, in pro per.

*Elias Hansen, of* Salt Lake City, and *J. Rulon Morgan,* of Provo, for appellants Vernor E. Baird et al.

*L. C. Montgomery,* of Heber, and *D. M. Draper,* of Salt Lake City, for respondents John A. Malia et al.

*J. Rulon Morgan,* of Provo, for respondents J. Harold Giles et al.

*George B. Stanley,* of Heber, and *Cheney, Jensen, Marr & Wilkins,* of Salt Lake City for respondents A. C. & E. Dewey Moulton.

*Draper, Boyden & Draper,* of Salt Lake City, and *L. C. Montgomery,* of Heber, for respondents Starley et al.

PRATT, Justice.

We shall refer to these two cases as No. 1266 and No. 1410. They were consolidated for trial and came on for trial September 11, 1939.

Case No. 1266 was filed August 14, 1934. The State Bank Commissioner and the Examiner in charge of the closed Bank of Heber City sued J. Harold Giles and his former wife, Josie Baird Giles, upon a promissory note signed only by Mr. Giles. The note is a renewal of former obligations signed by him, and was dated April 28, 1933. It is for $2,550. His liability on the note is not questioned.

The controversy arises over two certificates of stock of 24½ shares each of the Lake Creek Irrigation Company. These certificates were delivered to the Bank by Mr. Giles about May 21, 1929, as security for the obligation of which the note sued upon is a renewal. The certificates stand in the name of Josie Baird Giles, the former wife. On the back of each is an indorsement in blank with the name of Josie Baird Giles appearing upon the line for the signature. The two are not in the same handwriting. Mrs. Giles denies that the signatures are hers, and denies that J. Harold Giles had any authority to deliver those certificates as collateral. Furthermore, she alleges that on October 10, 1929, she sold the water stock to her brother Vernor Baird. This alleged sale occurred as part of the terms of a deed of a ranch to her brother, for which he executed a note and mortgage to her for $15,000 bearing date of October 10, 1929. This note and mortgage are the bases of case No. 1410 set out hereafter. The stock certificates were among the assets of the Bank when it was taken over by the Bank Commissioner as a closed institution August 29, 1933. It was sometime between this date and October, 1933, that Mrs. Giles learned that the Bank had her certificates of stock.

Case No. 1410 was filed November 15, 1937. A. C. Moulton and C. Dewey Moulton brought suit against Vernor Baird and his wife to foreclose the $15,000 note and mortgage, to which reference is made above. The mortgage includes the same reference to the 49 shares of stock as the deed from Mrs. Giles to her brother. Mrs. Giles never received more than $10 upon the note and mortgage from her brother. Those instruments came into the hands of the Moultons in the following manner:

One George B. Stanley, at the request of Mr. Baird, prepared the deed, the note, and the mortgage for the signature of Mrs. Giles and Mr. Baird. This was about October 10, 1929. At that time Mr. Stanley was not admitted to the practice of law in this state. After signature, the deed

and the mortgage were delivered to Mr. Baird, who recorded them, and the note was left with Mr. Stanley for delivery to Mrs. Giles. She never came for the note, nor did Stanley deliver it or mail it to her. He was admitted to the practice of law in 1931. Thereafter, the Moultons came to him as an attorney, with a claim against Mr. and Mrs. Giles. He instituted suit for them, got a writ of attachment, and pursuant to that writ, delivered the note to the sheriff, as being the property of Mrs. Giles. The sheriff also served the writ upon Mrs. Giles, upon Mr. Baird, upon the Lake Creek Irrigation Company, upon the Bank Commissioner, and upon the County Recorder. Mr. Stanley took judgment in favor of the Moultons and against the Giles, executed upon the judgment and sold the note and mortgage upon execution sale to the Moultons for $100. This suit of Moulton v. Giles was filed July 7, 1934.

In the answer of this case No. 1410 the Bairds attack the attachment and execution sale of their note and mortgage to Moultons on the grounds, among others, that the note was in Mr. Stanley's hands as attorney for Mr. Baird and Mrs. Giles, and he could not deal with it as attorney for the Moultons—that the attachment and execution sale were void for that reason. The defendants also set up the fact that at the time of the attachment there was an agreement between Mrs. Giles and Mr. Baird to cancel the note and mortgage in consideration of the transfer by Mr. Baird of the property involved to their mother, Elizabeth Baird. The transfer to the mother actually took place January 28, 1935, and the mortgage was released of record that date by William Baird, another brother of Mrs. Giles, pursuant to a written power of attorney executed by her. Mrs. Giles, Elizabeth Baird, and the Bank Commissioner were made party defendant to this suit. Mrs. Giles defended upon practically the same grounds as did the Bairds; Mrs. Elizabeth Baird claimed the property covered by the note and mortgage not only pursuant to the deed from Vernor Baird, but claimed the certificates of water stock which are in

question in the first suit as well as this, by reason of a purchase of that stock at an assessment sale by the Lake Creek Irrigation Company.

Elizabeth Baird died February 5, 1938, and J. Rulon Morgan, the executor of her estate, was substituted in her place. Mr. Morgan also appears in the case as the surviving partner of the law firm of Morgan and Morgan, to whom Vernor Baird gave a mortgage upon the property before he deeded it January 28, 1935, to his mother.

This, generally, is the picture presented by the two cases. Judging from the pleadings there is little or no conflict of interests between Mrs. Giles, Vernor Baird, and J. Rulon Morgan in his representative capacities. The conflict arises between this group of defendants and the Moultons, and, as to the certificates of water stock, the Bank Commissioner and Examiner in charge. Hereafter we shall simply refer to the Bank Commissioner, and not repeat also the Examiner in charge.

The lower court gave the Bank Commissioner judgment on the note in No. 1266 and a prior lien upon the certificates of water stock. In case No. 1410, he gave the Moultons a decree of foreclosure on the property involved including the water stock, but subject to the Bank Commissioner's lien as to the latter. By stipulation one set of findings of fact, conclusions, judgment and decree were made applicable to both cases. This appeal is taken by the Bairds, Mrs. Giles, and Mr. Morgan in his representative capacities.

Case No. 1266. The lower court found that one of the signatures on the back of one of the certificates of stock—No. 64—was in the handwriting of Mrs. Giles, but the other was not. We think the testimony and a comparison of the writings in the case supports this finding. But the lower court held that both signatures were Mrs. Giles' and that she authorized the pledge of the stock upon the theory that she had clothed J. Harold Giles with apparent authority to pledge the stock as security for the loans. The

testimony and a comparison of the handwriting indicates that the second signature was in the handwriting of J. Harold Giles.

The extent of an agent's apparent authority is not measured by the extent of power exercised by the agent; but by the principal's conduct with reference to the power exercised by the agent. Either by action or by inaction where there is a duty to act, the principal may create a situation the reasonable interpretation of which by a third party with whom the agent is about to deal, is such as to lead that third party to believe that the agent has authority to deal with him as contemplated. Under such circumstances the law will hold the principal responsible to that third party for the results of that deal with the agent. But the conduct of the principal must be such as occurs prior to the deal, and not subsequent thereto. The latter conduct may have evidentiary value as a recognition of the principal of his former conduct, or may evidence a waiver of his right to object to lack of authority in his agent; but to be the inducement for the third party to enter into an agreement with the agent, the conduct must occur prior to the agreement. 2 C. J. S., Agency § 96, page 1214, et seq.

What occurred in this case the reasonable interpretation of which was such as to induce the bank to believe that Mrs. Giles authorized J. Harold Giles to pledge the stock?

All the property involved in these controversies was that of Mrs. Giles. J. Harold Giles conducted her business affairs. She knew little of what he did except that she knew of his borrowing money at the bank, depositing it in a joint account, upon which she as well as Mr. Giles drew checks. The notes for this borrowed money were signed by Mr. Giles but not Mrs. Giles. On occasion she had loaned him money to pay back such an obligation as this. Generally speaking, it is reasonable to infer from a course of conduct in borrowing by an agent,

that the agent has authority to pledge the principal's property. At least, upon such a background of borrowing for the benefit of both Mr. and Mrs. Giles, it would be reasonable to infer from a presentation of a certificate of stock indorsed with the signature of the principal, that the agent had authority to pledge the stock. There seems little question but that the bank knew of Mr. Giles management of the property and where the money was being deposited. But there is a fact in this case that defeats this reasoning. It is the presentation of a certificate upon which there is a signature quite evidently not that of Mrs. Giles. There is no evidence in the case that would justify the belief that Mr. Giles was authorized to sign his wife's name to any instrument. A course of conduct creating an apparent authority in an agent embraces only those matters that are incident to such a course of conduct. In determining what may or may not be included as incidents of that conduct, we should not overlook the requirements of the law as it may by statute or otherwise be made applicable to such conduct. Under Section 18-3-1, R. S. U. 1933, in order to transfer certificates of stock, the signature of the owner must be indorsed thereon, or written authority of the agent must accompany the certificate. The absence of both is a warning to others to deal at arms length. The presentation of a certificate otherwise indorsed is a warning that all is not as it should be—it is a warning that there may be some limitation to the agent's authority so far as the use of that stock is concerned. The receipt of such a warning places upon the party dealing with the agent, the burden of ascertaining the limitation of that agency. That party may not, in good faith, rely upon the previous conduct of the principal—he has been warned that that conduct may have a false appearance. Nor can it be said that the party dealing with the agent may accept that which conforms to the previous conduct of the principal and reject that which does not. Once having been warned, reasonable prudence requires an investigation into that which

would otherwise have the reasonable appearance of an authority for the agent to act.

In the present case, the bank was warned by the presentation of the certificate (No. 68) with the signature upon it not in the handwriting of Mrs. Giles. It was then put on notice that the conduct of J. Harold Giles might not be within the powers that the previous course of conduct of Mrs. Giles would reasonably indicate. It could not accept either certificate, under the circumstances, except at its peril.

It may be thought that the element of time which elapsed between the pledge and the time Mrs. Giles took any action in the matter, would adversely affect the reasoning set out above. This might be true had there been some evidence that Mrs. Giles knew, or should have known, of the pledge. Without such evidence, it is reasonable to believe that she thought the stock was still in her trunk, and that she had properly conveyed the water right by the deed to her brother.

We come now to case No. 1410. The practice of law includes the preparation of legal instruments and contracts by which legal rights are secured. 7 C. J. S., Attorney and Client, page 704, § 3g and note 30. The preparation of the deed, the note, and the mortgage, was the practice of law. This was done by Mr. Stanley for Mr. Baird at a time when the former was not admitted to practice before the Bar of this State. It was the practice of law nevertheless, and Mr. Stanley was Mr. Baird's attorney in performing those services. The fact that he was not licensed to practice did not obselve him from the duty of an attorney toward his client. He was as bound to exercise good faith in the matter as were he then a licensed practitioner. When the note was left with him for delivery to Mrs. Giles, he was still acting as such an attorney. If for any reason delivery became imposible—be the fault his or Mrs. Giles—he was not released from his obligations toward his client, Mr. Baird. The note should, under such

circumstances, have been returned to the client. No demand for it by Mr. Baird was necessary. Mr. Stanley never acquired any rights in that note by such impossible situation. Therefore, his method of attaching and selling the note to other clients of his own was flying right in the teeth of his duties to Mr. Baird. It was conduct that public policy will not tolerate. Mr. Baird's defense based upon this conflict of interest in Mr. Stanley as an attorney, is well taken. To permit an attorney to so deal with his client's property would countenance a fraud upon the client.

This case illustrates rather well the harm that may befall a client by such manipulations of his counsel. But for the acts of Mr. Stanley, Vernor Baird's obligations to his sister would have been peaceably settled. Instead the Bairds are forced through a lawsuit with strangers to the transaction simply because the attorney upon whom Mr. Baird relied instead of looking after his client's interest, by taking advantage of certain legal process, placed his client's property in the hands of third parties, to the client's detriment.

That the client may ultimately win the case makes the transaction none the less reprehensible. We have already frowned upon conduct of an attorney whose interests are conflicting. *Gillette* v. *Newhouse Realty Co.*, 75 Utah 13, 282 P. 776, 779, held:

"It is a well-settled general rule that an attorney cannot represent conflicting interests. For more cogent reasons an attorney may not, by a contract of employment with his client, place himself in a position where his own interests are in conflict with those of his client. The relation of attorney and client is one of trust and confidence requiring the attorney to use all the care, skill, and diligence at his command to serve his client alone without any obligation to serve a master whose interests may be adverse to those of his client, and without any temptation to serve his own interests at the expense of the interests of his client. The rule that an attorney may not by his contract of employment place himself in a position where his own interests or the interests of another, whom he represents, conflicts with the interests of his client, is founded upon principles of public policy. It is designed to serve various purposes, among them, to prevent the dishonest practitioner from fraudulent conduct, to preclude the honest

practitioner from putting himself in a position where he may be required to choose between conflicting duties or between his own interests, and those of his client, to remove from the attorney any temptation which may tend to cause him to deviate from his duty of enforcing to the full extent the right of his client, to further the orderly administration of justice, and to foster respect for the profession and the courts. In cases where applicable the rule has been rigidly adhered to by the courts.   *   *   *"

The attachment in this case is void as against public policy. It is unnecessary to discuss the other points in the case.

The judgment in this case should be modified as follows: That part granting a lien on the water stock in favor of the State Bank Commissioner and the Examiner in charge of the Bank of Heber City, vacated and set aside, but their judgment against J. Harold Giles be affirmed; and the judgment and decree of foreclosure in favor of the Moultons against Vernor Baird and his wife reversed, and judgment of no cause of action entered in favor of the Bairds. It is so ordered.

The case is remanded for findings, conclusions and decree to conform to this decision. Costs to appellants.

MOFFAT, C. J., and LARSON, J., concur.

WOLFE and McDONOUGH, JJ., concur in the results.