## MORGAN v. FOURTH JUDICIAL DISTRICT COURT OF WASATCH COUNTY et al.

## MOULTON et al. v. SAME

Nos. 6565, 6587. Decided October 8, 1943. (141 P. 2d 886.)

No. 6565:

*Elias Hansen,* of Salt Lake City, and *J. Rulon Morgan,* of Provo, for plaintiff.

*George B. Stanley,* of Heber City, and *Moyle, Richards & McKay,* of Salt Lake City, for defendants.

No. 6587:

*Moyle, Richards & McKay,* of Salt Lake City, for plaintiff.

*Elias Hansen,* of Salt Lake City, and *Grover A. Giles,* Atty. Gen., for defendant.

WOLFE, Chief Justice.

The petitioners (plaintiffs) in each of these companion suits sued out alternate writs of mandamus to require the lower court to enter findings, conclusions and judgment in accordance with the respective effects which such petitioners claimed for the order of this court made in the case of *Malia* v. *Giles*, 100 Utah 562, 114 P. 2d 208, 213. On remittitur two sets of findings, conclusions and decree were proposed respectively by J. Rulon Morgan, as executor, and by the Moultons. The lower court adopted neither of them but made its own findings, conclusions and decree.

These proceedings in mandamus are, therefore, for the purpose of clarifying the order made in *Malia* v. *Giles*, supra. For that reason they are considered and decided together.

The order in *Malia* v. *Giles*, supra, reads as follows:

"That part granting a lien on the water stock in favor of the State Bank Commissioner and the Examiner in charge of the Bank of Heber City, vacated and set aside, but their judgment against J. Harold Giles be affirmed; and the judgment and decree of foreclosure in favor of the Moultons against Vernor Baird and his wife reversed, and judgment of no cause of action entered in favor of the Bairds."

Reference is made to the opinion in the case of *Malia* v. *Giles*, supra, for the background facts preceding the suing out of these writs of mandamus. They will not be repeated here.

The lower court found the costs which were granted by this court to the appellants to be $634.39 and apportioned $320.94 to J. Rulon Morgan, as executor, for his costs as winning appellant against the Bank Commissioner and the Moultons, and $313.45 was awarded evidently to Josie Baird Giles Smith, a winning appellant in 1266 Civil, on the theory apparently that she was the only appellant in that suit and that in 1410 Civil she was also more than a nominal appellant being interested in the defeat of any lien

in favor of the Moultons on the property conveyed by Vernor and Mary Baird to her mother Elizabeth Baird.

This $313.45 was then ordered to be credited on the judgment which the Moultons held against Josie and Harold Giles obtained in suit 1261 Civil. Morgan protested this division of costs on the ground (1) that he had, as executor of the Estate of Elizabeth Baird, advanced all of them; (2) that Josie had put in no cost bill; (3) that the Estate of Elizabeth and himself individually, because of his $5,000 mortgage, were the only beneficiaries in defeating the Bank and the Moultons on appeal. Vernor and Mary Baird had no interest and J. Harold Giles, former husband of Josie, had not appeared in the appeal and there was no evidence that Josie had any equity in the land and water rights conveyed by Vernor and Mary Baird to Elizabeth Baird. We shall first consider the question as to which, if either, of the petitioners in these two mandamus suits should prevail and then pass on to a consideration of the matter of who is entitled to costs.

The positions of the respective petitioners as to the effect of the order of this court in *Malia* v. *Giles*, supra, are as follows: Morgan contends that when by the decision the Moultons were declared to have no cause of action against the Bairds it meant no cause of action whatsoever, neither on the note for $15,000 and the mortgage given to secure it nor as to a creditor's bill to search out in satisfaction of the judgment obtained in 1261 Civil, assets still belonging actually to Josie Baird but ostensibly to her mother, Elizabeth Baird, and claimed to have been conveyed in fraud of creditors; that it was the duty of the trial court, therefore, after remittitur simply to file findings holding that neither the Bank Commissioner nor the Moultons had any lien on the certificates of water stock or on the land involved in the suit, and that the findings should provide that the water stock be delivered to J. Rulon Morgan as executor of the Estate of Elizabeth Baird free of any liens in favor of the Bank Commissioners or the Moultons.

The Moultons contend: That the order set out above provided that the judgment of the lower court was "modified" and not reversed; that insofar as the judgment was not modified it must stand; that this court only found that the method of acquisition of the note and mortgage was against public policy; that there were parts of the judgment and findings of the lower court which were not modified and were therefore res adjudicata, to-wit, those parts which gave the Moultons a lien on the property; that such parts of the findings and decree were not dependent alone on the allegations of the complaint of the Moultons in 1410 Civil but on allegations which were contained in Moulton's reply to Morgan's answer, which allegations set up fraud on the part of Josie, Vernor, Mary and Elizabeth Baird to place the assets of the note and mortgage and the land and water stock out of the reach of the Moultons by connivance between Josie and Vernor to cancel the mortgage and for Vernor and Mary to convey to Elizabeth the land in purported payment of a pretended indebtedness owing from Josie to Elizabeth and thus prevent it coming back to Josie where it would be subject to the judgment of the Moultons obtained in 1261 Civil.

The difficulty with the position of the Moultons is that an examination of the pleadings in 1410 Civil reveals that their complaint is for the straight recovery on said note to which they claimed title and foreclosure of the mortgage securing it. The prayer is for a money judgment for $15,000 and for delivery of the water stock by the Bank Commissioner so that it might be foreclosed and sold by the sheriff with the land in satisfaction of the judgment. The very foundation of the whole action is the note and mortgage. When this court held that they had no title to the note and mortgage their whole action fell.

It is true that when Josie set up as a defense to the action on the note and mortgage the fact that it had been cancelled and by agreement the property conveyed to Elizabeth at

her behest in order to pay a claimed debt owing from Josie to Elizabeth, the Moultons in reply and in order to avoid the effect of that answer, alleged that the said cancellation and conveyance were for the purpose of hindering and delaying creditors and especially the Moultons. These allegations of the reply were not only perfectly consistent with the complaint but in aid to it. If the allegations of the reply were proved to the satisfaction of the court—which they were—then it served as an estoppel to prevent Josie, Vernor, Mary and Elizabeth, or Elizabeth's estate, from maintaining that the note and mortgage, so far as Moulton's ability to collect out of the property was concerned, were not in existence, and, what amounts to the same thing, would, in spite of the fact that the note and mortgage were cancelled, permit the court to place an equivalent lien on the property to the extent of Moulton's indebtedness the same as if the mortgage was existent. But the important thing to note is that the right of the Moultons to any of these remedies depends on the fact that they had a right to the note for $15,000 and the mortgage securing it. Where it was determined by this court that they had wrongly obtained title to said note and mortgage and that their attachment and consequent execution in 1261 Civil were void, the whole structure of their suit fell. Certainly if their attachment was void the execution in pursuance thereof was void. Execution on property so made accessible for execution by a void attachment was also void. Especially in this the case where no independent levy was made after judgment but the property sold in pursuance of the levy by the attachment.

The Moultons now contend that, the equitable jurisdiction of the court having been invoked, the court should, under the praper for general relief, continue to hold onto the case to do equity—that it will fit the remedy to the situation. While there seems to be a basis for a holding of the lower court that the cancellation of the note and mortgage and conveyance by Vernor and Mary to Elizabeth

Baird was to hinder and delay the Moultons in the collection of their debt, the findings of the lower court were in response to allegations in the reply, which as before stated were for the purpose of avoiding an answer which itself was a seeming defense to the foreclosure of the note and mortgage. The findings of the court were not in response to allegations in a creditor's bill to follow assets of Josie and have them applied to the judgment of the creditor. If the allegations of the reply were to be so treated it would constitute a departure. This case is not to be confused with those cases where a party rightly comes into a note and mortgage or supposes that he has done so but finds that, through fraud or connivance on part of the owner of the property or of the owner of the note and mortgage, the same are nonexistent, or that he has been deprived of ownership. In such case it is quite true that a court of equity will not suffer the mortgagor or the mortgagee to gain by their own fraud or connivance, and if the allegations of the reply set up facts which, when proved, showed such fraud the court will from them create an estoppel or will, in pursuance of its general jurisdiction, pursue the property into the hands of a noninnocent purchaser and impress a lien on it equivalent if possible to the lien of the mortgage. In his brief filed after argument, counsel for the Moultons call our attention to such cases. In the instant case the Moultons based their claim to title to the note and mortgage upon an act on their agent's part which was against public policy. Their whole suit was founded on alleged ownership of a note and mortgage which ownership was ab initio void.

It was this situation which impelled this court to say that it was "unnecessary to discuss the other points in the case." When the underpinnings of the whole suit were knocked out, there was naught to do but to order that "judgment of no cause of action be entered in favor of the Bairds." That meant no cause of action of any kind as reflected by the complaint and all pleadings in aid thereof. Had the Moultons built the structure of their suit, not on foreclosure

of a note and mortgage to which they had no right or title, but on a creditor's bill to pursue property which it was claimed the owner had endeavored by fraudulent acts to place beyond their reach, the results may have been different.

What has been said above disposes of this aspect of the case. The court below must recast its findings so as to place the water stock and leave the land in the Estate of Elizabeth Baird. The Moultons obtained no encumbrances on this land or the water stock by virtue of this suit. In this respect the alternative writ sued out by J. Rulon Morgan as executor of the Estate of Elizabeth Baird is made permanent.

As to costs:

Mandamus lies to compel an act which the party against whom it is directed must perform. While costs are by statute given to the prevailing party and by this court according to order, the matter of determining their amount is with the lower court. In this case the order of this court was simply "costs to appellants." It was the task of the trial court to determine to which appellants the costs were owing. Unless we can say that under the facts J. Rulon Morgan as executor is the only person to whom the court could grant the costs, mandamus in this respect will not lie. How stands the case in this respect. Morgan paid all the costs for both suits since they were consolidated. No one else filed a cost bill. Morgan says that since all the costs were advanced by the estate the order of the lower court should be that they be returned to the estate.

Josie Baird Giles Smith was the only defendant in 1266 Civil who appealed from that suit. She filed no cross-appeal in 1410 Civil but when the suits were consolidated her answer in 1266 served to raise the same issues in the consolidation as a cross-appeal in 1410 would have raised between her and the bank and it can be so treated. While the defenses of Josie were common to those of the estate

of Elizabeth Baird—both relying on the deed from Vernor and Mary to Elizabeth Baird, and the invalidity of the transfer of the stock certificates by J. Harold Giles to the bank—the defense of invalidity was peculiarly the property of Josie, although its benefits acrued to the estate which claimed the certificates.

Josie was a necessary appellant in the 1266 Civil, the suit brought by the bank against her and J. Harold Giles. She was also interested in overturning the lower court's judgment sustaining the claim of the Moultons in 1410 Civil because acording to her claim a debt due to Elizabeth Baird had been paid by the transfer by Vernor and Mary of the land described in the allegedly cancelled mortgage. Hence according to her claim she was interested in keeping this debt paid. The property before transfer from Vernor and Mary was loaded with a lien in favor of J. Rulon Morgan allegedly as surviving partner of Morgan and Morgan. In this respect J. Rulon Morgan was depending on the ground that he had a lien prior to the Moultons and to the estate of which he was executor. If all the money for costs was advanced from the estate it was advanced in part to defend his individual claim against the estate as well as against the Moultons. To this extent it must be considered an advancement by the estate for the benefit of a party adverse to the estate although actually the claims of estate and Morgan both being represented by Morgan were harmonious. By the same token money advanced by the estate for the benefit of Josie, even though the estate was to be the beneficiary with Josie in reversal on appeal, must be considered as a loan to Josie of money to pay the costs of appeal.

When a party prevails in the appellate court and obtains costs he or she is a creditor of the party losing. Josie was to the extent to which she was entitled to costs a creditor of the bank and the Moultons. Certainly to the extent that the bank owed her costs it was her debtor and she its creditor. Since the Moultons were her judg-

ment creditors, there is no reason why such costs as she might be entitled to from the bank in 1266 Civil should not be devoted to a part payment of her indebtedness to the Moultons. A portion of any money owing her by the Moultons because of costs due her by reason of her having won her appeal against them should be devoted to their judgment in 1261 Civil against her.

Morgan makes the point that the money is not due her because it was not paid by her but by the estate. But a third party by paying costs of an appellant who is the judgment debtor of the appellees cannot defeat the claim of the latter to have their obligation for costs offset against the judgment which they hold against the appellant. It is in the nature of an equitable counterclaim. There was no showing that the other parties to the appeal refused to advance or insure the payment of their share of the costs and that the estate was compelled to pay the whole thereof in order to protect its own interests. The evidence is that Morgan as executor never discussed the matter with any of the other appellants. Enough has been said to make it apparent that mandamus cannot be had to compel the court to award the costs to Morgan as executor of the Baird Estate. Whether the court properly apportioned the costs we cannot in this proceeding say. There is nothing before us to show what amount the bank paid or would be required to pay. This court in its order did not fix the amount which each losing interested party was required to pay. These, therefore, are matters to be determined by the lower court.

The alternative writ of mandate sued out by the Moultons is recalled and quashed; the writ sued out by Morgan is made permanent except as to the matter of costs and as to that matter it is dismissed; each party to bear his own costs. It is so ordered.

LARSON, McDONOUGH, MOFFAT, and WADE, JJ., concur.