585 F.2d 932
 UNITED STATES FIDELITY AND GUARANTY COMPANY, a Maryland
Corporation, Appellee,
v.
LOUIS A. ROSER COMPANY, INC., a Utah Corporation, Appellant,
and
A. Kemp Fisheries, Inc., a Minnesota Corporation.
 No. 78-1148.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 14, 1978.
Decided Nov. 1, 1978.
 
 Thomas M. Burton and Richard H. Harris, Jr., of Hancock, Rothert & Bunshoft, San Francisco, Cal., for appellant.
 Tyrone P. Bujold, Hanft, Fride, O'Brien & Harries, Duluth, Minn., for appellee.
 Before GIBSON, Chief Judge, MATTHES, Senior Circuit Judge, and MARKEY*, Chief Judge, U.S. Court of Customs and Patent Appeals.
 MATTHES, Senior Circuit Judge.
 
 
 1
 This appeal by Louis A. Roser Company, Inc., referred to as appellant or Roser, presents the basic and underlying question whether the United States District Court for the District of Minnesota should have granted the motion of appellant to require the United States Fidelity & Guaranty Company, referred to as USF&G, to reimburse appellant for attorney's fees and other necessary costs or fees expended by appellant in defending an action filed on August 4, 1970. In that action, A. Kemp Fisheries, Inc., referred to as Kemp, sought to recover damages of $250,000 from appellant in connection with an industrial refrigeration system purchased by the Kemp company from appellant. Liability was predicated upon negligence, strict products liability, and breach of warranty. Jurisdiction was based upon diversity of citizenship and the amount in controversy. That proceeding was under the supervision of the Honorable Philip Neville.
 
 
 2
 USF&G sold to appellant on October 1, 1968, a "Master Insurance Policy" providing comprehensive general and contractual liability coverage. The policy contained an exclusion designated as "K" which specifically excluded coverage for liability by virtue of product design defects. The maximum coverage provided by the policy was $100,000. Under the liability provisions of the policy, USF&G had the "right and duty to defend any suit against the insured seeking damages on account of . . . property damage, even if any of the allegations of the suit are groundless, false, or fraudulent . . .."
 
 
 3
 On August 12, 1970, appellant tendered defense of the action brought by Kemp to USF&G. A claims agent for the latter, by letter dated August 25, 1970, informed appellant that USF&G accepted the defense subject to the coverage and limitations of the policy, and invited Roser to "join at your own expense for the defense of . . . those allegations . . . which are not within the contemplation of the policy." Subsequent to this suggestion, appellant retained counsel to represent it in the Kemp action.
 
 
 4
 Thereafter, on October 12, 1970, USF&G filed a declaratory action in Judge Neville's division of the district court against Roser and Kemp, seeking a determination that, by virtue of the design defect coverage exclusion, the USF& G policy did not cover Roser against Kemp's claim.
 
 
 5
 By an order entered on December 21, 1970, Judge Neville consolidated the Kemp v. Roser suit and the declaratory judgment action filed by USF&G for the reason that "the same factual issues and evidence will be involved in the trial of both cases." Following the consolidation of the two cases, a prehearing conference was held. In a lengthy colloquy between Judge Neville, the independent counsel retained by appellant, and the attorney representing USF&G, it was agreed that the consolidated actions would be tried together, that a jury would decide the issue of liability in the Kemp case, and that Judge Neville would decide the question of coverage which was the subject of the declaratory judgment action.
 
 
 6
 The jury found for Kemp and against appellant on the basis of breach of an implied warranty and awarded Kemp damages in the amount of $112,000. Roser appealed to this court, but later the action was settled and the appeal dismissed.
 
 
 7
 In the declaratory judgment action, Judge Neville concluded that the jury found that Kemp was entitled to recover for breach of contract based on express warranty, or, in effect, for product design defect, and not on negligence nor strict liability. He held that exclusion "K" relieved USF&G from liability to pay the judgment against Roser. Both Roser and Kemp appealed Judge Neville's decision to this court which affirmed without opinion. U.S. Fidelity and Guaranty Co. v. Kemp Fisheries, 465 F.2d 1407 (8th Cir. 1972).
 
 
 8
 It is important to note that the independent counsel retained by appellant had submitted a bill to USF&G in April, 1971, for their services in defending the Kemp action. On November 15, 1971, one month after Judge Neville's decision and while both cases were pending on appeal, Roser filed a motion in the district court seeking an order to compel USF&G to reimburse Roser for fees paid to defend the Kemp suit. Judge Neville denied the motion because the pending appeals had removed jurisdiction over the case from the district court. However, Judge Neville stated that his order did not prejudice Roser's right to renew its motion after the appellate proceedings were completed, and stated further that he would be inclined to award Roser attorney's fees.
 
 
 9
 Although attorney's fees continued to be a matter of discussion between USF&G and appellant both during the period that the appeals were pending and after the completion of the appeals process, Judge Neville was never able to rule on the issues now before us in this appeal. Disease cut his judicial career tragically short. Judge Neville died on February 13, 1974, after a long illness. The Honorable Donald D. Alsop was appointed as judge of the district court for Minnesota on January 17, 1975. On September 2, 1976, appellant's independent counsel proposed that the issue of attorney's fees be resubmitted to the district court.
 
 
 10
 On January 27, 1977, Roser did renew its motion for attorney's fees and costs in the district court. Judge Alsop entered an order on December 30, 1977, denying Roser's motion. Judge Alsop premised his decision on a finding that Roser had essentially waived any right it may have had to reimbursement from USF&G. It is from this order that Roser appeals to this court.[1]
 
 
 11
 Other facts material to a determination of this appeal will be set out in the opinion as they become necessary to a discussion of the issues.
 
 
 12
 * We perceive the central question in this case to be whether or not, under the undisputed facts, USF&G is required to reimburse appellant for the reasonable value of the services its independent counsel rendered in defense of the Kemp action. In that regard, a disputed has developed for the first time in this court as to whether the controversy is to be resolved by application of the law of Utah, as claimed by appellant, or the law of Minnesota, as claimed by USF& G. Although there is a brief reference in Judge Alsop's memorandum order indicating that he regarded Minnesota law as controlling, the record on appeal is inadequate to convince us that the choice of law issue was properly raised and presented to the district court.
 
 
 13
 In our view, this matter merits scant analysis or discussion. This is so not only because the parties failed to properly submit the question to the district court, but also for the more important reason that we conclude that the result will be the same in this case whether the law of Utah or the law of Minnesota is applied.[2]
 
 II
 
 14
 Appellant's motion is premised on the assumption that USF&G had a duty to defend appellant in the Kemp suit. USF&G vigorously denies that it had any such duty, and argues that because Judge Neville decided in the declaratory judgment action that Kemp's recovery was based on a theory of product design defect, a ground of recovery specifically excluded by the policy, it was never obligated to defend the suit brought by Kemp against appellant. In effect, USF&G contends that the duty of an insurer to defend an action brought against its insured depends upon the outcome of that action. We cannot agree.
 
 
 15
 It is the general rule that the duty of an insurance company to defend its insured is to be determined by the allegations of the complaint or petition in the action brought against the insured. An insurer must defend its insured if the pleadings in the action against the insured allege facts which, if established, would support a recovery within the coverage of the policy. Ritter v. U.S. Fidelity & Guaranty Co., 573 F.2d 539, 542 (8th Cir. 1978); Babcock & Wilcox Co. v. Parsons Corp., 430 F.2d 531, 536 (8th Cir. 1970); Lee v. Aetna Casualty & Surety Co., 178 F.2d 750 (2d Cir. 1949); Annot., 50 A.L.R.2d 459, 465-69 (1956); 14 G. Couch, Insurance, § 51:38-40 at 532-33 (2d ed. 1965). Thus, the duty of an insurer to defend its insured is broader than its duty to pay a judgment rendered against its insured. Ritter v. U.S. Fidelity & Guaranty Co., supra at 542; Carter v. Aetna Casualty & Surety Co., 473 F.2d 1071, 1075 (8th Cir. 1973). As Judge Learned Hand stated in Lee v. Aetna Casualty & Surety Co., supra at 751, "(I)t is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from any one else, which indicates, or even demonstrates, that the injury is not in fact 'covered.' "
 
 
 16
 Corollary to the above stated rule is the proposition that where a complaint states a claim for relief alleging differing facts or theories of recovery and at least one, but not all, of the alleged theories would be covered by the policy if proved, the insurer has a duty to defend its insured. This court discussed this duty in its opinion in Babcock & Wilcox Co. v. Parsons Corp., supra at 537:
 
 
 17
 We conclude, therefore, that the trial court correctly held that count three of the complaint filed by Babcock stated a claim potentially within the coverage of the policy. And, once a complaint states one claim within the policy's coverage, the insurer has a duty to accept defense of the entire lawsuit even though other claims in the complaint fall outside of the policy's coverage. (Citations omitted.)
 
 
 18
 See also Annot., 50 A.L.R.2d 459, 506-07 (1956); 14 G. Couch, Insurance, § 51:43 at 536, 537 (2d ed. 1965).
 
 
 19
 These rules for determining an insurer's duty to undertake the defense of its insured are well established in the law of Minnesota. Truchinski v. Cashman, 257 N.W.2d 286, 287 (Minn.1977); Bituminous Casualty Corp. v. Bartlett, 240 N.W.2d 310, 312 (Minn.1976); Republic Vanguard Insurance Co. v. Buehl, 295 Minn. 327, 204 N.W.2d 426, 429 (1973); Christian v. Royal Insurance Co., 185 Minn. 180, 240 N.W. 365, 366 (1932). The Supreme Court of Minnesota summarized the law of that state concerning this question in Bituminous Casualty Corp. v. Bartlett :
 
 
 20
 We review some basic law concerning the nature of the insurer's obligation to defend its insured. The obligation to defend is contractual in nature and is generally determined by the allegations of the complaint against the insured and the indemnity coverage afforded by the policy. . . . However, the complaint is not controlling when actual facts clearly establish the existence or nonexistence of an obligation to defend. . . . If any part of the cause of action against the insured arguably falls within the scope of coverage, the insurer must defend. . . . Any ambiguity as to coverage at the pretrial stage is to be resolved in favor of the insured. . . .
 
 
 21
 (I)t is apparent that an insurer seeking to avoid having to defend an insured carries the burden of demonstrating that all parts of the cause of action against the insured fall clearly outside the scope of coverage. If any part is arguably within the scope of coverage, the insurer should defend, reserving its right to contest coverage based on facts developed at trial on the merits. (Citations omitted.)
 
 
 22
 240 N.W.2d at 312.
 
 
 23
 The parties have not cited and our research has not discovered a case in which the courts of Utah have found it necessary to define explicitly the duty of an insurer to undertake the defense of its insured. However, there is language in a recent decision of the Supreme Court of Utah which indicates that Utah would adhere to the general principles enunciated above if a proper case were presented. In State Farm Mutual Auto Insurance Co. v. Kay, 26 Utah 2d 195, 487 P.2d 852, 855 (1971), that court stated:
 
 
 24
 Another concept, which should be interjected at this point, is that where the facts alleged in a complaint against the insured support a recovery for an occurrence covered by the policy, even though the insurer has knowledge that the injury is not in fact so covered, it is the insurer's duty to defend unless relief is obtained by way of a declaratory judgment.[3]
 
 
 25
 Although neither the pleadings in the Kemp suit nor the "Master Insurance Policy" sold by USF&G to appellant are set out in the record on appeal, we are satisfied after a careful examination of the statement of facts agreed to by both parties that the complaint in the Kemp action did allege a claim for relief based upon grounds both within and without the policy. Judge Neville made the following finding in his order of January 2, 1972:
 
 
 26
 There is no real question but that under the policy, United States Fidelity and Guaranty owed its insured a defense against strict liability and negligence claims, i. e., the cost of attorney's fees and expenses in defending, even though the claims were or might turn out to be false, fraudulent or groundless. It does not necessarily owe a defense, however, where the claim made lies outside the coverage of the policy, i. e., a design defect. Here at least two of the claims (however groundless) asserted by plaintiff were within the scope of coverage, i. e., negligence and strict product liability. The insurance company owed a defense on these claims.
 
 
 27
 Judge Neville also found that the disposition of the Kemp action was not known until the case had been tried or substantially tried. Judge Alsop, in his order denying appellant's motion, adopted Judge Neville's finding that USF&G had a duty to defend the Kemp suit.
 
 
 28
 We conclude that USF&G was obligated by the policy it sold to appellant to defend the Kemp action. In this case, a complaint was filed against an insured defendant alleging facts both within and without the scope of that defendant's liability insurance coverage. It was impossible to determine the basis on which the plaintiff would recover until the end of the trial. Under such circumstances, the defendant's liability insurer cannot escape its obligation under the policy to defend its insured merely because a declaratory judgment action on the issue of coverage is decided in its favor after the conclusion of the liability trial.[4]
 
 III
 
 29
 Having demonstrated that USF&G was obligated to provide a defense to the Kemp action, there remains a question which is crucial to the disposition of this appeal. Did there exist a conflict of interest between USF&G and appellant in regard to contesting Kemp's claim a contest in which appellant was interested not only in defeating any recovery by Kemp, but also in safeguarding its rights under the policy should Kemp recover a judgment.
 
 
 30
 Although it was to the common interest of both appellant and USF&G to prevent Kemp from making any recovery on its claim, a material difference existed with respect to the basis for recovery should Kemp prevail in its lawsuit. It must be remembered that Kemp was relying on three separate grounds for relief, two covered by the policy and one outside the scope of coverage. Common logic dictates that in such circumstances, counsel for USF&G would be inclined, albeit acting in good faith, to bend his efforts, however unconsciously, toward establishing that any recovery by Kemp would be grounded on the theory of Kemp's claim which was not covered by the policy. Therein lay the conflict.[5]
 
 
 31
 The record attests to the foregoing analysis and points unerringly to the recognition by Judge Neville, by the independent counsel employed by appellant, and by counsel employed by USF&G that this conflict of interest existed. For example, in a conference held to discuss the consolidation of the Kemp suit and the declaratory judgment action, counsel retained by USF&G candidly stated: "I find that representation of Roser in the Kemp suit and representation of USF&G provides an inherent conflict and I am concerned about that conflict . . . ." Judge Neville's response clearly indicated that he was well aware of the conflict of interest:
 
 
 32
 Well, I appreciate both the honesty and frankness of both (the attorney retained by USF&G and Roser's independent counsel) in recognizing there is a definite conflict of interest here and further to appear as sole counsel for Roser, for instance, (the attorney retained by USF&G) might (s)o present the case, in a way . . . that would tend to auger for no coverage.
 
 
 33
 In his post trial order denying appellant's motion for lack of jurisdiction, Judge Neville described the nature and effect of this conflict:
 
 
 34
 At trial United States Fidelity and Guaranty appeared by its own counsel. Roser and Company appeared by separate counsel, stating, which was true, that United States Fidelity and Guaranty had an interest adverse to that of Roser in that it would attempt to direct the evidence and stress the points to show non-coverage under an exception or exclusion in the insurance policy. In fact Roser at that moment was being sued by United States Fidelity and Guaranty in a separate suit . . . to determine coverage or non-coverage. The court believes it was necessary that defendant Roser, to protect its interests, have separate counsel, even though the efforts and interests of both Roser and United States Fidelity and Guaranty on many points were joint and compatible to each other. It is no answer for United States Fidelity and Guaranty to say that it furnished counsel at trial to defend against the claims that had they been determinative would have been within the coverage, for on other points their interests were adverse and Roser could not expose itself to that risk. The net effect then is that United States Fidelity and Guaranty did not furnish Roser a defense by furnishing counsel with other objectives in mind and not impartial. Roser was not bound to accept counsel with obvious conflicting interest. Under these circumstances, the court would be inclined to award Roser attorney fees against United States Fidelity and Guaranty even though, as the case turned out, the claim as adjudicated against Roser was not within the policy coverage.
 
 
 35
 It is axiomatic that an attorney cannot represent two clients whose interests are actually, as opposed to potentially, conflicting. This is particularly true where, as here, one of those clients is suing the other. Canon 5 of the A.B.A. Code of Professional Responsibility requires a lawyer to "exercise independent professional judgment on behalf of a client." More specifically, Ethical Consideration 5-15 provides in part: "A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests." See also EC 5-1, EC 5-2, EC 5-14, EC 5-17 and EC 5-22.
 
 
 36
 We note that the Code of Professional Responsibility has been adopted in Minnesota by Supreme Court order dated August 4, 1970, as the standard of professional conduct for attorneys in that state. In addition, a recent decision of the Supreme Court of Minnesota contains Dicta which is instructive on this point:
 
 
 37
 Although we are not confronted with the issue of whether or not the merits of a pending action for personal injury damages could be litigated in a declaratory judgment action to determine an insurer's obligation to defend and indemnify its insured, we express doubt that such litigation on the merits could be entertained without the consent and participation of the injured party and his right to a jury determination of disputed fact issues. It would seem that an insurer would find its position as a plaintiff and potential indemnitor both tactically hazardous and fraught with perplexing problems of conflicts of interest between it and its insured's legitimate interests. (Emphasis supplied.) (Citations omitted.)
 
 
 38
 Truchinski v. Cashman, supra at 288.
 
 
 39
 Although the Utah courts have not dealt with the issue of conflict of interest in a factual context like the one presented by this appeal, it is clear that Utah law follows the general rule in forbidding attorneys to represent clients with conflicting interests. See, e. g., Malia v. Giles, 100 Utah 562, 114 P.2d 208, 212 (1941).
 
 
 40
 Because of the conflict which existed, USF&G simply could not provide the impartial, effective representation to which appellant was entitled. However, the conflict of interest did not relieve USF&G of its contractual obligation to defend appellant against the Kemp action. Therefore, USF&G must now bear the expense of that defense.[6]
 
 
 41
 Finally, Judge Alsop adopted Judge Neville's findings that USF&G owed appellant a defense against the Kemp action, i. e. the cost of attorney's fees and expenses, that the interests of USF&G and appellant were adverse, and that it was necessary for appellant to have separate counsel in order to protect its interests. However, Judge Alsop denied appellant's motion because he found that the appellant had not effectively exercised its right to demand independent counsel and had, in fact, "essentially waived" any right it had to be reimbursed for attorney's fees and costs.
 
 
 42
 Judge Alsop's order emphasizes that appellant selected its separate counsel without consulting with USF&G or giving USF&G an opportunity to select counsel to represent appellant, and that appellant agreed to the joinder for trial of the declaratory judgment action with the main liability action. The order does not elaborate as to how either of these actions constitutes a waiver of appellant's rights under the liability policy. In addition, although we have diligently examined the record on appeal, we have found no evidence to support this conclusion of waiver.
 
 
 43
 Militating against waiver are the following factors: By letter dated August 25, 1970, USF&G, through its claims agent, invited appellant to join at its own expense for the defense of claims outside the scope of policy coverage. In effect, USF&G instructed appellant to obtain independent counsel. The fact that USF&G attempted to escape its obligation to defend the Kemp suit by indicating that appellant would be expected to pay for its own counsel can have no effect on USF&G's liability for the expenses of defending that action. Furthermore, both parties agreed to consolidate the liability and declaratory judgment actions at the suggestion of Judge Neville. The purpose of this consolidation was to promote judicial economy by avoiding the necessity of trying the case twice. Rather than constituting a waiver, this consolidation made it more imperative that appellant have independent counsel.[7] Indeed, there is evidence in the agreed statement of facts on appeal to the effect that USF&G and appellant agreed at the beginning of the consolidated trial to take up the question of the allowance of attorney's fees following that trial. Judge Neville's order of January 2, 1972, reflects this agreement:
 
 
 44
 The court does not have a transcript of the record, but it is the court's recollection that all counsel agreed at the opening of trial that the question of allowance of attorney fees and if so the amount thereof would be taken up after the trial . . . . The court regards that counsel and the court, subject to what the record may show, have an agreement that this claim is not waived however.
 
 
 45
 Although the full record of the district court proceedings is not available on appeal, USF&G does not deny that this agreement existed and has expressly stipulated that the facts in the agreed statement of facts may be taken as true by this court.
 
 
 46
 Finally, appellant continued to send bills to USF&G requesting reimbursement of its defense expenses during the pendency of the appeals and up to the time appellant renewed its motion for expenses in the district court.
 
 
 47
 To summarize, we delineate the considerations which support our conclusion that there existed not only a potential but also an actual conflict of interest between USF&G and appellant. First, one of the three theories of recovery alleged by Kemp in its action was not covered by the USF&G policy. Second, USF&G, through its claims agent, invited appellant to obtain independent counsel. Third, within a short period after the Kemp suit was begun, USF&G filed a separate declaratory judgment action against appellant seeking a declaration of no coverage because Kemp was relying on a theory of recovery excluded by the policy. Fourth, the two actions were consolidated and evidence on both cases was introduced at a consolidated hearing. Fifth, the conflict of interest was recognized by the late Judge Neville, widely regarded as an eminent and highly qualified jurist, who had an opportunity to view the proceedings firsthand. Sixth, Judge Alsop also recognized the existence of the conflict of interest and adopted Judge Neville's finding in this regard. Seventh, USF&G's own counsel candidly admitted for the record that his representation of USF&G and appellant presented an inherent conflict which troubled him. Eighth, the record fails to support the theory of waiver relied on by Judge Alsop in denying appellant's motion.
 
 
 48
 In conclusion, we agree with Judge Neville that USF&G was required to provide counsel free of the egregious conflict of interest present in this case, and that USF&G must now reimburse appellant for the fair and reasonable value of the services rendered by appellant's independent counsel in defending the Kemp action.
 
 
 49
 Although appellant requests us to remand this case to the district court with instructions to enter judgment for the amount it claims it has expended, we find no evidence in the agreed statement of facts which establishes the value of the services rendered by the independent counsel. Nor does the agreed statement of facts submitted to us indicate that USF&G has agreed that the amount requested by appellant is the fair and reasonable value of those services. Therefore, we must remand this action to the district court for a hearing on the amount due appellant.
 
 
 50
 The order denying the motion is vacated and the cause remanded for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation
 
 
 [1]
 Although this appeal was originally scheduled for oral argument in this court in September, 1978, the parties stipulated that the case could be submitted without oral argument. Pursuant to that stipulation, the appeal was submitted on the briefs of the parties and the agreed statement of facts on appeal filed in lieu of the record on appeal in accordance with Fed.R.App.P. 10(d)
 
 
 [2]
 Although it is our considered opinion that Utah law should be applied, we do not find it necessary to elaborate on this point as our decision in this case does not turn on a resolution of this question. It is settled that in a diversity case, a federal court must follow the choice of law rules of the state in which it sits. Klaxon Co. v. Stentor Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Larsen v. Erickson, 549 F.2d 1136, 1139 n.4 (8th Cir. 1977). Inasmuch as this action was brought in the district court for Minnesota, the choice of law rules for that state are controlling. Because the policy was negotiated, entered into and performed in Utah, the Minnesota choice of law rules mandate an application of Utah substantive law to determine USF& G's obligations under the policy. McCulloch v. Canadian Pac. Ry. Co., 53 F.Supp. 534, 540 (D.Minn.1943); Combined Ins. Co. of America v. Bode, 247 Minn. 458, 77 N.W.2d 533, 536 (1956); Larx Co. v. Nicol, 224 Minn. 1, 28 N.W.2d 705, 710 (1947); Thomson-Houston Electric Co. v. Palmer, 52 Minn. 174, 53 N.W. 1137, 1138 (1893). See also Employers' Liability Assurance Corp. v. Youghiogheny & Ohio Coal Co., 214 F.2d 418, 420 (8th Cir. 1954)
 We reject USF&G's argument that Minn.Stat.Ann. § 60A.08, subd. 4 requires the application of Minnesota substantive law to this case. Travelers Ins. Co. v. American Fidelity & Casualty Co., 164 F.Supp. 393 (D.Minn.1958). See also Hartford Accident & Indemnity Co. v. Delta & Pine Land Co., 292 U.S. 143, 149-50, 54 S.Ct. 634, 78 L.Ed. 1178 (1934). But as noted Supra, the ultimate result we reach would be the same whether Utah or Minnesota law controls.
 
 
 [3]
 The California district court of appeals decision cited by the Utah court is also instructive. In Commercial Ins. Co. of Newark, N. J. v. Pressley, 53 Cal.Rptr. 220, 226 (Dist.Ct.App.1966), the court indicated that the duty to defend continued until the insurer obtained a final judgment in a declaratory relief action to determine coverage
 
 
 [4]
 USF&G's reliance on Rent-a-Scooter, Inc. v. Universal Underwriters Ins. Co., 285 Minn. 264, 173 N.W.2d 9 (1969) and Continental Western Ins. Co. v. Toal, 244 N.W.2d 121, 125-26 (Minn.1976) is misplaced. Rent-a-Scooter involved a claim for attorneys' fees incurred in an unsuccessful declaratory judgment action brought against an insurance company to establish coverage. Roser is seeking attorneys' fees expended in defending the original liability action, not the declaratory judgment action
 In Toal, the policy did not cover injuries which were intended or expected. The court held that, as a matter of law, the insured who committed armed robbery intended or expected the injuries which resulted. Coverage in the Kemp case could not have been determined as a matter of law based on the complaint.
 
 
 [5]
 We agree with USF&G's argument that ordinarily an attorney retained by an insurance company to defend its insured is required to act conscientiously and render effective service. In addition, we stress that the record does not indicate and the appellant does not contend that USF&G's attorney acted improperly. However, we cannot escape the conclusion that it is impossible for one attorney to adequately and fairly represent two parties in litigation in the face of the real conflict of interest which existed here. Even the most optimistic view of human nature requires us to realize that an attorney employed by an insurance company will slant his efforts, perhaps unconsciously, in the interests of his real client the one who is paying his fee and from whom he hopes to receive future business the insurance company
 Although it has perhaps become trite, the biblical injunction found in Matthew 6:24 retains a particular relevancy in circumstances such as these, "No man can serve two masters . . . ."
 
 
 [6]
 Although neither Utah nor Minnesota has dealt with the precise question presented here, our research discloses that other jurisdictions subscribe to the principle that where, as here, there is a conflict between the insurer's interest and that of the insured, the insurer must either provide an independent attorney to represent the insured or pay the costs incurred by the insured in hiring counsel of its own choice. See, e. g., All-Star Ins. Corp. v. Steel Bar, Inc., 324 F.Supp. 160, 165 (N.D.Ind.1971); Executive Aviation, Inc. v. National Ins. Underwriters, 16 Cal.App.3d 799, 94 Cal.Rptr. 347, 354 (1971); Employers' Fire Ins. Co. v. Beals, 103 R.I. 623, 240 A.2d 397, 404 (1968); Prashker v. United States Guarantee Co., 1 N.Y.2d 584, 593, 154 N.Y.S.2d 910, 917, 136 N.E.2d 871, 876 (1956)
 
 
 [7]
 In retrospect, perhaps it would have been better to have resolved the issue of coverage in the declaratory judgment action before trial of the liability charge. Although this procedure might have necessitated trying the case twice, it would have obviated the difficulties created by the conflict of interest