442 P.2d 921

Joseph SANTI, Plaintiff and Appellant,

v.

The DENVER & RIO GRANDE WESTERN
RAILROAD COMPANY, a corporation,
Defendant and Respondent.

No. 10988.

Supreme Court of Utah.

June 20, 1968.

Richard C. Dibblee, of Rawlings, Wallace, Roberts & Black, Salt Lake City, for appellant.

Grant Macfarlane, Jr., and Thomas M. Burton, of Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, for respondent.

CROCKETT, Chief Justice:

Plaintiff Joseph Santi sued the defendant, The Denver & Rio Grande Western Railroad Company, claiming breach of contract to sell him 16 carloads of lumber which had been dumped along the railroad right-of-way in a train wreck and derailment November 3, 1962, near Woodside, Utah. Upon a plenary trial the district court found that no contract had been entered into and rendered judgment against the plaintiff. He appeals.

Immediately following the derailment the Railroad sent a freight claims agent, E. B. Mitchell, to the site to see what could be done about salvaging the lumber. It is not disputed that his instructions were to take bids from prospective buyers and submit them to the defendant's Denver office for approval. To facilitate communications a direct-line telephone connection with the Denver office was installed at the wreck site.

Plaintiff's position appears to be based upon an assumption that the trial court must accept his version of the evidence: that he had certain conversations with the claims agent, Mitchell, in which he offered $500 per car for the lumber; that he saw Mitchell go and make a telephone call; and that Mitchell thereafter made statements to this effect: that he had obtained approval of the offer, and that the lumber was sold to the plaintiff.

In arguing that the evidence compels a finding that there was a valid contract, the plaintiff places reliance on Section 170 of the Restatement of Agency 2d:

A disclosed \* \* \* principal who invites third persons to rely upon the representation of an agent as to the happening of a contingency upon which the authority of the agent depends is subject to liability upon contracts made with the agent by such third persons in *reasonable* reliance upon unauthorized and untrue representations of the agent that the contingency has happened. (Emphasis added.)

The soundness of the foregoing statement in proper circumstance is not questioned. But the plaintiff misconstrues it in attempting to apply it to the facts in this case as found by the trial court. He fails to make a necessary distinction between the principal (the Railroad) inducing a third party (plaintiff) to believe that the agent (Mitchell) was an agent for the general purpose of procuring bids for the lumber, as distinguished from the Railroad inducing plaintiff that it had *accepted his offer*.[1]

 In connection with the problem here involved this principle of agency is to

be kept in mind. For the same reason that an agent cannot establish his agency solely by his own out-of-court declarations, he cannot enlarge whatever authority he has solely by such declarations.[2] However, we recognize that there may be circumstances created by the principal, or for which it is responsible, and upon which a third party reasonably can and does rely, and in which instance the principal may be bound by the representation made.[3]

 The salient facts here are that plaintiff knew of the limitation on Mitchell's authority—that he had to get company approval, and there is nothing shown in the evidence to indicate that any official of the Railroad, apart from the conduct of Mitchell himself, did anything to induce the plaintiff to believe that it had *accepted his offer*. Nevertheless, assuming for the purpose of analysis that the circumstances here shown would present a question of fact as to whether the Railroad had created such a situation that the plaintiff could place "reasonable reliance upon unauthorized and untrue representations" of Mitch-

---

1. This situation is covered by comment b, Restatement of Agency 2d § 170, "The fact that the principal manifests to a third person that the agent is to act if a contingency occurs does not of itself lead to the inference that the principal invites him to rely upon the agent's manifestation that the contingency has occurred. Thus, if, in a power of attorney, it is recited that the agent is to have authority to convey Blackacre only if Whiteacre has been previously conveyed to the principal, there is no manifestation that

persons dealing with the agent may rely upon his statements as to the conveyance of Whiteacre."
2. See 3 Am.Jur., Agency, Sec. 78; and Williston, Contracts (3d Ed.) Sec. 277A.
3. See Skerl v. Willow Creek Coal Co., 92 Utah 474, 69 P.2d 502, that principals are generally bound by the acts of their agents which fall within the apparent scope of their authority and will be bound where innocent third parties have dealt with the agent in good faith.

ell to bring it within the purview of Sec. 170 of the Restatement quoted above, the evidence certainly does not compel that conclusion as a matter of law. As we view this case, there is an insuperable obstacle to the plaintiff's position in the traditional rule that it was the trial court's prerogative to determine the facts, and there is a reasonable basis in the evidence for the trial court's refusal to find them in accordance with plaintiff's contentions.

The conclusion just stated makes it unnecessary for us to give any extensive attention to the issue of the statute of frauds on which the trial court also found in favor of the defendant. But with respect thereto we make these comments. The purported contract being for more than $500, it was necessary to meet the requirement of Sec. 60–1–4, U.C.A.1953.[4] The portion which plaintiff attempted to meet was "[to] give something in earnest to bind the contract." The day after the conversation with Mitchell, instead of going to Mitchell with whom he was dealing, plaintiff went to the defendant's station in Helper and handed a $500 check to a Mr. Juliano, a cashier who knew nothing of the transaction, who took it and put it in his desk. The evidence that the check was delivered to an employee who was neither authorized to, nor in fact made any agreement or commitment with respect to accepting it, supports the trial court's determination that the requirement of the statute of frauds had not been met.[5]

Affirmed. Costs to defendant (respondent).

CALLISTER, HENRIOD, TUCKETT and ELLETT, JJ., concur.

4. Sec. 60–1–4, U.C.A.1953, provides that in order for a contract to sell goods for $500 or more to be enforceable, the buyer must either: accept part of the goods, or pay something to bind the contract, or there must be a memorandum in writing.

5. That part payment cannot be forced upon a party by delivering a check to him which he does not accept as payment, see Cooper v. Pedersen, 30 Ill.App.2d 384, 173 N.E.2d 549 (1961).