Gail BILLINGS, et al., Plaintiffs
and Respondents,

v.

Stanley T. FARLEY, et al., Defendants
and Appellants.

No. 17336.

Supreme Court of Utah.

June 24, 1982.

Dallas H. Young, Jr., Ivie & Young, Provo, Dave McMullin, Payson, for defendants and appellants.

Robert N. Macri, Salt Lake City, for plaintiffs and respondents.

HOWE, Justice:

Plaintiffs, fruitgrowers in Utah County, brought this action to enforce the sale of tart cherries which they delivered to the defendants, operators of a fruit receiving and processing plant, at 21½ cents per pound. The trial court ruled in favor of those five plaintiffs who are parties to this appeal. The remaining plaintiffs recovered nothing. Defendants appeal.

Prior to 1973, the defendants Garn L. Baum and Peggy Baum, his wife, owned and operated a fruit receiving and processing plant in Utah County. However, due to operating losses in 1970, 1971 and 1972, the

Baums had accumulated business losses totalling over $271,513. In 1973 they were insolvent and the fruit processing plant was foreclosed upon by one of their creditors, the Bank of American Fork. On or about July 10, 1973, the Bank sold the plant to Garn Baum's brother-in-law and sister, Stanley T. Farley and Ora Farley, his wife. On that date, Garn L. Baum and Fantasy Fruits sent a letter to certain fruitgrowers in Utah County including some of the plaintiffs herein, stating that:

> Through the help of Ora and Stanley T. Farley; this processing plant will be operating this year. . . .

> At present, the grower price has not been determined. Reports July 9th, indicate that the regular Michigan packers are buying at 15 cent prices. If 'locked in' prices are lifted from the processor and retailer; the grower prices could go up substantially. . . .

> Fantasy Fruits is the name of the company who [sic] will purchase your cherries. Fantasy Fruits is owned by Stanley T. Farley, Orem, Utah. . . .

Plaintiffs presented testimony that Garn L. Baum had conversations with the plaintiffs Merrill Gappmeyer, Paul Hansen and Dean Gillman, a partner of Gillman Brothers, and promised them that Fantasy Fruits would pay as much for cherries as a competing processor, Muir-Roberts, was paying. The other plaintiffs, Gail Billings and Harley Gillman, received no oral promise from Baum as to any definite price, but they received and relied upon the letter of July 10. Testimony established that Muir-Roberts paid 21½ cents per pound for cherries of comparable grade processed in 1973.

Plaintiffs sued defendants seeking the difference between the 15 cents per pound price they had been paid and the 21½ cent price they had expected. The trial court held that all the plaintiffs who are parties to this appeal were entitled to 21½ cents per pound plus interest on the unpaid amount thereof from March of 1974 and awarded them judgment against the Baums and Stanley T. Farley. Inasmuch as the Baums and the Farleys had entered into an indemnification agreement whereby the Baums promised to hold the Farleys harmless from all liabilities which resulted from the operation of Fantasy Fruits, Mr. Farley was awarded judgment against the Baums on his cross-claim against them for the total of the plaintiffs' judgments.

Defendants contend that the trial court erred in that: (1) No evidence was adduced from which a contract for 21½ cents per pound could be found, (2) No evidence was adduced from which a partnership relationship between defendants Baum and Farley could be established, and (3) State and federal law prohibited enforcement of a 21½ cent contract price.

Defendants' first point challenges the adequacy of the evidence in support of the Findings and Conclusions of the trial court. Our review of the record discloses that many of the plaintiffs testified that Garn Baum had promised them that Fantasy Fruits would pay as high a price for cherries as the other processors in the area. The plaintiff Merrill Gappmeyer testified that:

> A: . . . The only conversations that we [Gappmeyer and Garn Baum] had as to a final price that I would be paid, was that I would be paid what anybody else was paid.

> Q: Did you mention Muir-Roberts at all?

> A: Yes.

> Q: And in what context was that mentioned?

> A: Just in the normal discussion, that 'I'll pay as well as Muir-Roberts or any of the other processors.'

Other plaintiffs testified of similar conversations with the defendant Garn Baum.

The defendants Garn and Peggy Baums' testimony on the issue of price was generally in direct conflict with the testimony of the plaintiffs. Where testimony is conflicting, it is the prerogative of the finder of fact to choose whom he would believe. See *Riggle v. Daines Mfg. Co.*, 23 Utah 2d 328, 463 P.2d 1 (1969); *Santi v. Denver & R.G.W.R. Co.*, 21 Utah 2d 157, 442 P.2d 921 (1968). In the instant case, after all parties

had a full and fair opportunity to present their evidence, the trial judge found that the defendants had promised to pay the plaintiffs Gappmeyer, Hansen and Dean Gillman 21½ cents per pound for the cherries. There is no reason to upset that ruling. As to the other plaintiffs to this appeal, Billings and Harley Gillman, the trial court found that no oral promise was made to them by the defendants as to any definite price, but that they received and relied upon the letter of July 10 which constituted an offer by the defendants to pay them the fair market price, which the court found to be 21½ cents per pound. Defendants do not challenge the interpretation so given to the letter by the trial court but object to the finding that 21½ cents per pound was the fair market price. We find no error in this regard. The trial court had before it evidence as to the price paid by Muir-Roberts and the Payson Fruit Growers' Association, as well as the price paid these processors and the defendants for their processed cherries and their processing costs. This evidence fully supports the trial court's finding that 21½ cents per pound was the fair market price. The fact that Muir-Roberts was licensed under § 5–1–2(e), U.C.A.1953 as a "commission merchant" whereas Mr. Farley and Fantasy Fruits were licensed under subdivision (g) of that same section as a "dealer", and in fact conducted their buying operations differently, does not foreclose that finding.

■ Defendants next complain that the trial court erred in finding that Mr. Farley was jointly liable with the defendants Baum as a partner in the fruit processing business. It is unnecessary for us to determine whether a partnership did in fact exist because Mr. Farley was liable as a principal. He obtained a license to operate as a dealer and secured a bond to insure payment to his growers pursuant to U.C.A.1953, §§ 5–1–5 and 5–1–8. He also obtained a license from the United States Department of Agriculture so that the processing plant could operate. He either directed or consented that the letter be sent to growers that Fantasy Fruits would purchase their cherries and to the statement in the letter that Fantasy Fruits is owned by "Stanley T. Farley." These facts clearly establish Mr. Farley's liability independently of any partnership with the Baums.

■ Defendants further argue that a federal price freeze in effect in the summer of 1973 prohibits the enforcement of a 21½ cent price. They have not specifically cited to us any documentation in support of this claim. Defendants, however, point out that a price freeze ordered by President Nixon in Executive Order No. 11723, on June 13, 1973, did not apply to "raw agricultural products", and that freeze was lifted by a later Executive Order on July 18, 1973. On the state of the record, this contention of the defendants must fail.

The judgment of the trial court is affirmed. Costs to plaintiffs-respondents.

HALL, C. J., and STEWART, OAKS and DURHAM, JJ., concur.