2009 Ark. App. 806

**LILLIAN H. ASHTON TRUST and Lillian H. Brooks (f/k/a Ashton), in her Capacity as Trustee of the Lillian H. Ashton Trust, Appellants,**

v.

**Kenny CARAWAY and Cohl Caraway, Appellees.**

No. CA 09–601.

Court of Appeals of Arkansas.

Dec. 2, 2009.

Rehearing Denied Jan. 13, 2010.

Gregg and Farris, by John C. Gregg, Batesville, for appellants.

Larry Dean Kissee, Ash Flat and L. Gray Dellinger, Melbourne, for appellees.

RITA W. GRUBER, Judge.

Appellants in this case are the Lillian H. Ashton Trust and Lillian H. Ashton Brooks, in her capacity as trustee for the Trust. They appeal from a decree of the Izard County Circuit Court ordering Mrs. Brooks to specifically perform the contract entered into on April 7, 2007, by her as trustee and appellees, Kenny and Cohl Caraway.[1] Pursuant to the contract, appellant accepted appellees' offer to purchase certain property owned by the trust in Izard County for $80,000, which was to be due and payable at closing. On appeal, appellant contends that the circuit court erred in ordering specific performance of the contract for three reasons: there was a failure of consideration and Mrs. Brooks revoked acceptance of appellees' offer; Mrs. Brooks was not competent to enter into the contract in April 2007; and there was undue influence. We find no error and affirm the circuit court's order.

This case began in early April 2007 when Cohl Caraway called Mrs. Brooks, who was at that time eighty-six years old and living in Downey, California. He asked her if she was interested in selling eighty acres that she owned in Izard County. According to Mr. Caraway's testimony, after discussing the property for several minutes, Mrs. Brooks told Mr. Caraway that she needed time to consider the offer and to call her back in a few days. Mr. Caraway called her back on April 2nd or 3rd at about 8:00 a.m. Pacific Time. Mr. Caraway testified at trial that Mrs. Brooks said she was interested in selling the property; that she indicated she had spoken with "some people" in the area; and to make her an offer. Mr. Caraway offered $1000 an acre, which she indicated sounded fair. He told his father, Kenny Cara-

---

1. Throughout this opinion we refer to one of the appellees as "Cohl" Caraway because the complaint filed by Mr. Caraway's attorney to begin this action refers to "Cohl," the style used in the circuit court (except for the final order) refers to "Cohl," the style in the notice of appeal and briefs filed with this court refer to "Cohl," and appellees' references in their brief are to "Cohl." However, we note that the contract used the name "Kohl" Caraway, Mr. Caraway's signature on the contract is "Kohl," the transcript of testimony from the trial refers to "Kohl," and the circuit court's decree that was appealed to this court refers to "Kohl."

way, about the verbal agreement and asked him to call Mrs. Brooks. Several days later Kenny Caraway called Mrs. Brooks and spoke with her about the land, which he said Mrs. Brooks was able to describe in detail. He explained that $500 or $1000 was the customary earnest money.

The Caraways then went to the office of Eric Bray, an attorney and licensed abstractor who owned Izard County Abstract, to fill out the Offer and Acceptance. Mr. Bray sent the contract to Mrs. Brooks. The Offer and Acceptance described the property, stated the price for sale was $80,000, and indicated that the earnest money to be paid by the Caraways was $1,000. Several days later, on April 10, 2007, the Caraways and Dennis Wilson, their partner in purchasing the property, went to Mr. Bray's office and called Mrs. Brooks. According to the testimony of the Caraways and Mr. Bray, while on the speaker phone, the Caraways, Mr. Wilson, Mr. Bray, Mrs. Brooks, and appellant's husband, Mr. Brooks, discussed the transaction. According to the testimony of the Caraways and Mr. Bray, Mrs. Brooks requested that the earnest money be changed from $1000 to $5000. Mr. Wilson wrote an earnest-money check for $5000 payable to the order of Izard County Abstract, dated April 10, and the amended Offer and Acceptance was faxed to Mrs. Brooks. She inserted the date April 4, 2007, as the date she accepted the offer; signed it as Lillian Brooks, Lillian Ashton Trust; and added in her handwriting the word "Trust" after the typewritten name Lillian Brooks under her signature. The contract was faxed back to Mr. Bray on April 10, 2007. Mr. Bray did not deposit the check into his escrow account, but merely held it pending closing or default. He testified that this was how he customarily handled such transactions.

On April 12, 2007, Mr. Bray received by fax from Stephen Drilling, Mrs. Brooks's son, a handwritten letter signed by Mrs. Brooks stating as follows: "I hereby rescind the offer and acceptance signed by me for the sale of the Arkansas property dated by me, Lillian A. Brooks, April 11, 2007." Included in the fax was also a letter from Mr. Drilling providing that he had the power of attorney to act in his mother's behalf and that he was hereby rescinding the "Offer and Acceptance" agreement signed by her, effective immediately. He stated further that, should the Caraways decide to contest the matter, he was prepared to litigate. He added, "Your clients' took unfair advantage of an 85 year old woman, who is incompetent and incompacitated [sic], in attempting to purchase this tract of property at far below its actual value."

The Caraways filed a complaint for specific performance against the Trust and Mrs. Brooks in her capacity as trustee on April 13, 2007. Appellants raised the affirmative defenses of duress and coercion along with incompetence or incapacity of Mrs. Brooks to enter into a contract. They also moved for a directed verdict at trial, contending that there was no consideration for the contract because the $5000 earnest-money check was never deposited or negotiated and Mrs. Brooks rescinded her acceptance.

The trial court entered an order on February 23, 2009, ordering Mrs. Brooks, on behalf of the trust, to specifically perform the contract, finding there was valid consideration for the contract and that Mrs. Brooks failed to meet her burden to prove that she lacked the mental capacity to enter into the contract. Appellants filed this appeal.

This is an equity case, which we review de novo on appeal. *MDH Builders, Inc. v. Nabholz Constr. Corp.*, 70 Ark.App. 284,

288, 17 S.W.3d 97, 100 (2000). However, we will not reverse the circuit court's findings of fact unless they are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.* In reviewing a trial court's findings of fact, we give due deference to the trial judge's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Holaday v. Fraker*, 323 Ark. 522, 920 S.W.2d 4 (1996).

## I. *Consideration*

■ For their first point on appeal, appellants contend that the circuit court erred in ordering specific performance of the contract because there was a failure of consideration when the earnest-money check was not deposited before Mrs. Brooks revoked her acceptance of appellees' offer. The essential elements of a contract are competent parties, subject matter, legal consideration, mutual agreement, and mutual obligations. *Stewart v. Combs*, 368 Ark. 121, 126, 243 S.W.3d 294, 298 (2006). While appellants cite both Arkansas cases and cases from other jurisdictions in support of their argument, none of those cases concerned signed written contracts; rather, the cases concerned oral contracts, or unexecuted written contracts. Payment was necessary in those cases to show part performance in order to take the contracts out of the operation of the statute of frauds. *See, e.g., Sossamon v. Davis*, 271 Ark. 156, 607 S.W.2d 405 (1980); *Rolfe v. Johnson*, 217 Ark. 14, 228 S.W.2d 482 (1950); *Santi v. Denver & Rio Grande Western R.R. Co.*, 21 Utah 2d 157, 442 P.2d 921 (1968); and *Cooper v. Pedersen*, 29 Ill.App.2d 384, 173 N.E.2d 549 (1961). Those cases are not relevant to this case.

■ In this case, the parties entered into a written contract, signed by both parties, pursuant to which appellees offered to purchase and appellant accepted and agreed to sell her property for $80,000. The Offer and Acceptance contract included an earnest-money clause that provided as follows:

> Buyer herewith tenders $5000 [$1,000 has been marked through and $5000 handwritten above it] as earnest money, to become part of purchase price upon acceptance. This sum shall be held by Agent and if offer is not accepted or if title requirements are not fulfilled, it shall be promptly returned to Buyer. If, after acceptance, Buyer fails to fulfill his obligations, the earnest money may become liquidated damages, which fact shall not preclude Seller or Agent from asserting other legal rights which they may have because of such breach.

This clause does not require the escrow agent to deposit or negotiate the buyer's tendered earnest money. Further, appellants have cited no authority for their contention that the escrow agent's failure to deposit the check into his escrow account constituted failure of consideration. Finally, as specifically noted by the trial court, there was no testimony presented that the check tendered by appellees to Izard County Abstract was insufficient or would not have been honored if presented. Indeed, Mr. Bray testified that he knew Mr. Wilson and that Mr. Wilson had never given him a check that was not good. We hold that the circuit court did not clearly err on this point.

## II. *Competence*

■ For their second point on appeal, appellants contend that the circuit court erred in ordering specific performance of the contract because she was not competent to enter into a contract in April 2007 and one of the required elements for a valid contract is competent parties. *See*

*Hunt v. McIlroy Bank & Trust,* 2 Ark. App. 87, 90, 616 S.W.2d 759, 761 (1981). Specifically, they point to the testimony at trial indicating that Mrs. Brooks was eighty-six years old when she signed the contract, suffered from Alzheimer's disease, and was taking pain medication. There is a presumption of law that every person is sane, fully competent, and capable of understanding the nature and effect of her contracts. *Union Nat'l Bank of Little Rock v. Smith,* 240 Ark. 354, 356, 400 S.W.2d 652, 653 (1966). The burden of proving incompetency rested with appellant. *Id.*

In spite of the testimony offered by Mrs. Brooks's three doctors, husband, and son concerning her lack of capacity, the circuit court determined that appellants failed to meet their burden to prove Mrs. Brooks was not competent to enter into the contract in April 2007. The circuit court stated that none of appellant's doctors gave real testimony as to appellant's exact mental capacity or state of mind at the time she signed the contract. The court further explained its finding as follows:

> My ruling and findings are substantially influenced by particular and specific conduct on Mrs. Brook's part that occurred contemporaneously with the date of the contract. First, Mrs. Brooks drafted and caused to be faxed to Izard County Abstract Company a well written, and in beautiful handwriting, letter purporting to "rescind" the subject contract. Secondly, Mrs. Brooks drafted, again in beautiful handwriting, a power of attorney for her son. The testimony at trial was that Mrs. Brooks was the author, and drafter, of these document. I find that in order to be able to even contemplate documents of this nature, her mental abilities had to be such that she was aware of the contract, that she had signed said contract, and that she owned land in Arkansas that the contract purported to sell. In addition, Mrs. Brooks

insisted upon an increase in the amount of earnest money from $1000.00 to $5000.00, and she personally noted that increase in the amount of earnest money on the face of the contract.

Giving due deference to the trial judge's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony, we hold the circuit court did not clearly err in finding that appellants failed to prove Mrs. Brooks was unable, because she lacked the mental capacity, to enter into a valid and enforceable contract at the time she signed the Offer and Acceptance.

### III. *Undue Influence*

Finally, appellants contend that Mrs. Brooks was an elderly woman suffering from Alzheimer's disease and there was undue influence by appellees in convincing her to sell her property below its fair market value. The circuit court found that the contract was negotiated over the telephone and that neither appellant nor her witnesses articulated what conduct on the part of appellees rose to the level of duress or coercion. Appellants point to no specific testimony demonstrating undue influence on the part of appellees. We note that Cohl Caraway testified that he did not know Mrs. Brooks's age or physical condition when he spoke with her and that she appeared to know the property well. Kenny Caraway testified that there was nothing in his conversation with Mrs. Brooks that led him to conclude she did not know the value or extent of her land or that she suffered from any cognitive or mental deficiency. We find no clear error on the part of the circuit court on this point.

Affirmed.

MARSHALL and HENRY, JJ., agree.